T.C. Memo. 2008-15

UNITED STATES TAX COURT

HENRY M. LLOYD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4395-06L.                    Filed January 29, 2008.

<u>Stephen P. Kauffman</u>, for petitioner.

<u>C. Teddy Li</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respondent's motion for summary judgment (respondent's motion).  We shall grant respondent's motion.

## Background

The record establishes and/or the parties do not dispute the following.

Petitioner resided in Washington, D.C., at the time he filed the petition in this case.

On April 15, 1991, petitioner filed a Federal income tax (tax) return (return) for his taxable year 1990 (1990 return). When petitioner filed his 1990 return, he paid the tax due shown in that return.

At a time not disclosed by the record after petitioner filed his 1990 return and before September 2, 1996, the Internal Revenue Service (IRS) conducted an examination with respect to petitioner's taxable year 1990. During that examination, the IRS proposed an increase in petitioner's tax of $55,609 for that taxable year, to which petitioner agreed.

On September 2, 1996, respondent assessed the additional tax of $55,609 to which petitioner had agreed and interest as provided by law for petitioner's taxable year 1990.[1] (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 1990, as well as interest as provided by law accrued after September 2, 1996, as petitioner's unpaid 1990 liability.)

---

[1]On Feb. 13, 1997, and Jan. 22, 1998, petitioner made payments with respect to his taxable year 1990 of $3,000 and $6,000, respectively. In addition, respondent credited a refund of $859 due to petitioner for his taxable year 2001 against the liability for petitioner's taxable year 1990.

Respondent issued to petitioner the notice and demand for payment required by section 6303(a)[2] with respect to petitioner's unpaid 1990 liability.

On April 15, 1992, petitioner filed a return for his taxable year 1991 (1991 return). In that return, petitioner showed no tax due.

At a time not disclosed by the record after petitioner filed his 1991 return and before August 26, 1996, the IRS conducted an examination with respect to petitioner's taxable year 1991. During that examination, the IRS proposed an increase in petitioner's tax of $13,380 for that taxable year, to which petitioner agreed.

On August 26, 1996, respondent assessed the additional tax of $13,380 to which petitioner had agreed and interest as provided by law for petitioner's taxable year 1991. (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 1991, as well as interest as provided by law accrued after August 26, 1996, as petitioner's unpaid 1991 liability.)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 1991 liability.

On July 12, 1993, petitioner filed a return for his taxable

_____

[2]All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

year 1992 (1992 return). When petitioner filed his 1992 return, he paid the tax due shown in that return.[3]

At a time not disclosed by the record after petitioner filed his 1992 return and before September 2, 1996, the IRS conducted an examination with respect to petitioner's taxable year 1992. During that examination, the IRS proposed an increase in petitioner's tax of $323 for that taxable year, to which petitioner agreed.

On September 2, 1996, respondent assessed the additional tax of $323 to which petitioner had agreed and interest as provided by law for petitioner's taxable year 1992. (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 1992, as well as interest as provided by law accrued after September 2, 1996, as petitioner's unpaid 1992 liability.)[4]

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 1992 liability.

On April 15, 1995, petitioner filed a return for his taxable year 1994 (1994 return). When petitioner filed his 1994 return,

---

[3]On Aug. 16, 1993, respondent assessed an addition to tax under sec. 6651(a)(2) of $3.27 and interest as provided by law. On Aug. 31, 1993, petitioner paid those assessed amounts.

[4]We shall refer collectively to petitioner's unpaid 1990 liability, petitioner's unpaid 1991 liability, and petitioner's unpaid 1992 liability as petitioner's unpaid liabilities for 1990, 1991, and 1992.

he did not pay the tax due shown in that return (i.e., $656).

On May 29, 1995, respondent assessed the tax due of $656 shown in petitioner's 1994 return, an addition to tax under section 6651(a)(2) of $6.56, and interest as provided by law for petitioner's taxable year 1994. (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 1994, as well as interest as provided by law accrued after May 29, 1995, as petitioner's unpaid 1994 liability.)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 1994 liability.

On October 10, 1997, petitioner filed a return for his taxable year 1996 (1996 return). When petitioner filed his 1996 return, he did not pay the tax due shown in that return (i.e., $4,291).

On November 10, 1997, respondent assessed the tax due of $4,291 shown in petitioner's 1996 return, additions to tax under sections 6651(a)(1) and (2) and 6654 of $386.19, $133.38, and $202, respectively, and interest as provided by law for petitioner's taxable year 1996. On April 13, 1998, respondent abated $480 of the assessed tax and $43.20 of the assessed addition to tax under section 6651(a)(1). On the same date, respondent also assessed an addition to tax under section 6651(a)(2) of $95.28

and interest as provided by law accrued after November 10, 1997.[5] (We shall refer to any unpaid and unabated assessed amounts with respect to petitioner's taxable year 1996, as well as interest as provided by law accrued after April 13, 1998, as petitioner's unpaid 1996 liability.)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 1996 liability.

On September 10, 1998, petitioner filed a return for his taxable year 1997 (1997 return). When petitioner filed his 1997 return, he did not pay the tax due shown in that return (i.e., $12,530).

On October 26, 1998, respondent assessed the tax due of $12,530 shown in petitioner's 1997 return, additions to tax under sections 6651(a)(1) and (2) and 6654 of $563.85, $438.55, and $228.11, respectively, and interest as provided by law for petitioner's taxable year 1997. (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 1997, as well as interest as provided by law accrued after October 26, 1998, as petitioner's unpaid 1997 liability.)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's

_____

[5]On Apr. 15, 1999, respondent credited a refund of $610 due to petitioner for his taxable year 1998 against the liability for petitioner's taxable year 1996.

unpaid 1997 liability.

On April 15, 2003, petitioner filed a return for his taxable year 2002 (2002 return). When petitioner filed his 2002 return, he paid $36,389 of the tax due shown in that return (i.e., $37,248).

On June 16, 2003, respondent assessed the tax due, including the $859 unpaid portion of that tax, shown in petitioner's 2002 return, an addition to tax under section 6651(a)(2) of $12.88, and interest as provided by law for petitioner's taxable year 2002. On January 19, 2005, petitioner paid $1,095.63 with respect to his taxable year 2002.[6] On February 14, 2005, respondent assessed a total of $216.42 consisting of an additional amount of the addition to tax under section 6651(a)(2) of $150.33 and interest as provided by law accrued after June 16, 2003, of $66.09 for petitioner's taxable year 2002. (We shall refer to any unpaid assessed amounts with respect to petitioner's taxable year 2002,[7] as well as interest as provided by law accrued after February 14, 2005, as petitioner's unpaid 2002 liability.)[8]

---

[6]After petitioner's payment on Jan. 19, 2005, petitioner's account with respect to his taxable year 2002 showed a credit of $216.42 with respect to that year.

[7]It does not appear from the record that there is any unpaid amount of liability with respect to petitioner's taxable year 2002. However, neither party makes any argument that there is no unpaid amount of liability with respect to that year.

[8]We shall refer collectively to petitioner's unpaid liabili-
(continued...)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 2002 liability.

On November 20, 2002, Kenneth H. Silverberg (Mr. Silverberg), petitioner's authorized representative, sent a letter (Mr. Silverberg's November 20, 2002 letter) to a manager in the IRS's offer-in-compromise unit (IRS offer-in-compromise unit). In that letter, Mr. Silverberg stated in pertinent part:

> RE:  Henry M. Lloyd * * *
>      Henry M. Lloyd PC * * *
>      Attached Offers in Compromise
>
>    *       *       *       *       *       *       *
>
> Pursuant to your letters of November 5, 2002, and on behalf of my clients identified above, I respect-fully submit copies of two Offers In Compromise, at-tached as completed Forms 656, along with supporting Forms 433-A and 433-B, and additional documentation which was provided by your Revenue Officer * * * [first revenue officer].
>
> We were advised by your Process Examiners that this OIC as previously submitted to you on October 28, 2002, was acceptable in form other than the fact that certain previous-period returns were not on file with the IRS (see attached statement by the taxpayer ex-plaining why these returns were not required, and attaching copies of returns as recently filed) and also that an obsolete version of Form 433-A and 433-B was used (the obsolete forms have been replaced with appro-priate forms, revision date 5/2001).

---

[8](...continued)
ties for 1990, 1991, and 1992, petitioner's unpaid 1994 liabil-ity, petitioner's unpaid 1996 liability, petitioner's unpaid 1997 liability, and petitioner's unpaid 2002 liability as petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002.

    The history of this OIC is set forth here as follows:

    I am advised by the taxpayer and his accountant that a lengthy Collection Division investigation and negotiation process has been conducted by * * * [the first revenue officer].  In early 2002, * * * [the first revenue officer] and the taxpayers' accountant reached agreement regarding the amount of an OIC that would be satisfactory to the Service. * * * [the first revenue officer] had reviewed the taxpayers' Forms 433-A and 433-B, and had prepared the Service's analysis of the "Amount That Could Be Paid" by each taxpayer. * * * [the first revenue officer] asked for an OIC in the amount of $19,200 from Mr. Lloyd's PC, and for an OIC in the amount of $6,576 from Mr. Lloyd personally.  The accountant was assured by * * * [the first revenue officer] that these OIC's would be accepted by the Service.  A copy of the "Amount That Could Be Paid" analysis is also included for your reference.

    The OIC's were submitted on February 13, 2002 in the exact amounts requested and the taxpayer received no response to date from the Service in respect of these OIC's.

    We have been advised by your Revenue Officer * * * [second revenue officer] of the IRS Appeals Office in Baltimore that the PC was considered to be "out of compliance" during the first quarter of 2002, because a payment by the taxpayer of a Form 941 payroll deposit was timely but mistakenly mailed as an attachment to the Form 941 return as opposed to being correctly deposited with a bank.  Therefore, these two OIC's were not rejected, but rather "returned" and thus held in abeyance and eligible for resubmission once the taxpayers were compliant for two consecutive calendar quarters from the first quarter of 2002.  Both taxpayers have been fully compliant for the second and third quarters of 2002, and these OIC's should thus be eligible for action.

    After familiarizing herself with the case, and after consulting with the OIC Manager in the IRS Baltimore Office, * * * [the second revenue officer] instructed us that, since the February 13 OIC's had not been "rejected" (only "returned"), the taxpayers may now resubmit the OIC's directly to your office.

Accordingly, since the taxpayers have now been in compliance for the two calendar quarters ended June 30, 2002 and September 30, 2002——and since the taxpayers are currently in full compliance——I respectfully submit the attached OIC's.

Mr. Silverberg enclosed with Mr. Silverberg's November 20, 2002 letter, inter alia, (1) completed Form 656, Offer in Compromise (Form 656 or offer-in-compromise), that petitioner signed and that was dated November 27, 2002 (petitioner's November 27, 2002 offer-in-compromise) and (2) completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals (Form 433-A), that petitioner signed and that was dated November 27, 2002 (petitioner's November 27, 2002 Form 433-A).[9]

Respondent assigned an offer-in-compromise specialist (first offer specialist) with the IRS offer-in-compromise unit to investigate petitioner's November 27, 2002 offer-in-compromise.

On January 12, 2004,[10] Mr. Silverberg sent a letter to the first offer specialist (Mr. Silverberg's January 12, 2004 letter). In that letter, Mr. Silverberg stated in pertinent part:

---

[9]The record does not indicate how Mr. Silverberg could have enclosed with Mr. Silverberg's November 20, 2002 letter Form 656 and Form 433-A that petitioner signed and that were dated Nov. 27, 2002, which was after the date of that letter. We note that each of those documents was apparently signed by petitioner again on Jan. 9, 2003.

[10]The record does not disclose what transpired with respect to petitioner's November 27, 2002 offer-in-compromise and petitioner's November 27, 2002 Form 433-A between the time respondent assigned them to the first offer specialist and Jan. 12, 2004.

RE:   Offer In Compromise -- Henry M. Lloyd * * *
      and Henry M. Lloyd, P.C. * * *


  *       *       *       *       *       *       *


This letter and its attachments constitute revised Offers In Compromise (OIC) for the two taxpayers identified above.

In our telephone discussion of December 22, you described certain things which needed to be done in order for the Service to consider the revised offers. This cover letter describes how everything you sought has been accomplished.  The attached Forms 656 contain the actual OIC's.[11]


  *       *       *       *       *       *       *


**Court-Ordered Payments**

You advised me that your computation of Reasonable Collection Potential, which indicates Mr. Lloyd has the ability to pay monthly installments of $1,304, includes no consideration of the cost of supporting his children or providing for their education, because we had produced no evidence that he was required by a court order to pay such amounts.  I apologize if you asked for the court order and I neglected to supply it – I did not understand that such a request had been made.

The Marital Settlement Agreement between Mr. Lloyd and his ex-wife is attached for your use.  It imposes a number of financial obligations on Mr. Lloyd, including the provision of health insurance and education, both of which Mr. Lloyd is currently paying for.  If you add these obligations to the other Necessary Living Expenses on your worksheet, you will see that they totally eliminate Mr. Lloyd's ability to make any in-

---

[11]The record does not contain Forms 656 referred to in Mr. Silverberg's January 12, 2004 letter.  That is because the declaration by Mr. Silverberg filed in support of petitioner's response to respondent's motion indicates that he was unable to locate such forms.  (Petitioner filed a response to respondent's motion, a declaration by Mr. Silverberg in support of that response, and a supplement to that response consisting of a declaration by petitioner.  We shall refer collectively to those filings by petitioner as petitioner's response.)

stallment payments in connection with this OIC.

He is required to pay for private school or college undergraduate tuition for his two children, and his wife is only required to contribute in the event her income exceeds $75,000 per year (page 10 of agreement).  It does not.  In this event, Mr. Lloyd's obligation is limited to the cost of providing the cost of undergraduate out-of-state education at the University of Virginia.  I have attached information from the internet which indicates that the cost of tuition, required fees, room and board for an out-of-state student was $25,036 per year during the 2002-2003 academic year.

| | |
|---|---|
| Per child annual obligation | 25,036 |
| X 2 children | 50,072 |
| Per month | 4,172 |

Since this additional obligation exceeds by more than threefold the amount you computed as a reasonable installment payment, I trust you will understand why the OIC cannot include any installment amount. * * *

On September 6, 2004, the first offer specialist sent a letter to petitioner (first offer specialist's September 6, 2004 letter).  In that letter, the first offer specialist stated in pertinent part:

This letter is only being sent to you because your representative Mr. Silverberg, doesn't have coverage for the Excise tax assessed on Form 5330, Return of Initial Excise Taxes Related to Employee Benefit Plans for tax periods ending December 31, 1991 and December 31, 1992.  The payoff balance computed through October 15, 2004 is $5,875.78.

In order to perfect your offer we have enclosed an amended Form 656, Offer in Compromise that includes these tax periods and have adjusted the offer figure to

$139,766.00[12] and this is based on the math error on your last amended F656 that you signed on September 29, 2004.[13] If agreed, sign, date and return to the address listed below.

Your timely response is requested by October 15, 2004 or your current offer may be returned without any appeal rights.

If you have any questions or need more information, please contact me at the address or the telephone number listed below * * *

On September 15, 2004, the first offer specialist sent another letter to petitioner (first offer specialist's September 15, 2004 letter).  In that letter, the first offer specialist stated in pertinent part:

During an offer investigation an offer may be returned when the investigation reveals the taxpayer doesn't have sufficient income tax withheld or paid.  Our records show you have an extension until October 15, 2004 for filing your year 2003 return.  But only $68,499.00 in tax payments was withheld.  Based on our calculations for year 2003 and using a gross income figure of $351,223.00 a total of $105,161.00 should have been paid on the income earned.

Enclosed is a copy of Form 1040-ES, Estimated Tax for Individuals for you to figure and pay your estimated tax due for year 2003.  Provide us with a copy of the completed worksheet and a check for the payment due, if any[,] should be mailed to the address listed below.

---

[12]The record does not contain the "amended Form 656" referred to in the first settlement officer's September 6, 2004 letter.

[13]The record does not indicate why the "last amended F656" referred to in the first offer specialist's September 6, 2004 letter could have been signed by petitioner and dated Sept. 29, 2004, which was after the date of that letter.  See infra note 15.

Your timely response and receipt of this information are requested by September 29, 2004 or this offer may be returned[.]

If you have any questions or need more information, please contact me at the address or the telephone numbers listed below * * *

On September 17, 2004, Mr. Silverberg and the first offer specialist had a telephonic discussion with respect to the first offer specialist's September 15, 2004 letter (September 17, 2004 telephonic discussion). During that discussion, the first offer specialist requested certain information from Mr. Silverberg. Thereafter, on October 1, 2004, the first offer specialist left Mr. Silverberg a voice mail message (first offer specialist's October 1, 2004 voice mail) requesting certain additional information.

On October 1, 2004, in response to, inter alia, at least certain of the requests made by the first offer specialist during the September 17, 2004 telephonic discussion and the first offer specialist's October 1, 2004 voice mail,[14] Mr. Silverberg sent a letter (Mr. Silverberg's October 1, 2004 letter) to the first offer specialist via facsimile. In that letter, Mr. Silverberg stated in pertinent part:

This responds to your voice mail message received this morning.

---

[14]The record does not indicate whether Mr. Silverberg responded to all of the requests made by the first offer specialist during the September 17, 2004 telephonic discussion and the first offer specialist's October 1, 2004 voice mail.

You asked that I fax to you today a copy of the personal Form 656 Offer In Compromise which has been reformatted to reflect the amount of $139,797, payable over the 84 month period in equal installments. That is attached to this fax, and the signed original will be hand-delivered to your office on Monday. Please let me know if there are any questions.

In response to your other questions, Mr. Lloyd's accountant informs me that Mr. Lloyd is neither under-paid nor under-withheld for 2003 and 2004. For 2003, the tax which has been withheld via the amended 941's ($68,655) exceeds 100% of Mr. Lloyd's 2002 liability ($36,389). His 2003 return is extended until October 15, and if there is any balance due for 2003 we under-stand he is "in compliance" by paying in full on that date. For the P.C., he has filed 941's and made appro-priate payments for the first two quarters of 2004. The third quarter payment is not due until October 15.

The following items are attached to substantiate his compliance.

1. Approval of the extension of the 2003 form 1040.
2. Copy of form 941 for the first quarter of 2004.
3. Copy of cancelled check for payment with the first quarter of 2004.
4. Copy of form 941 for the second quarter of 2004.
5. Copy of bank receipt for deposit with the second quarter of 2004.

Please let me know if you have any questions.

Mr. Silverberg enclosed with Mr. Silverberg's October 1, 2004 letter, inter alia, completed Form 656, that petitioner signed and that was dated September 29, 2004 (petitioner's September 29, 2004 offer-in-compromise).[15] In item 5 of petitioner's September

---

[15]The first offer specialist's September 6, 2004 letter referred to a "last amended F656", that petitioner signed and
(continued...)

29, 2004 offer-in-compromise, petitioner provided the responses

indicated to the following questions:

**Item 5 — To:   Commissioner of Internal Revenue Service**

I/We * * * submit this offer to compromise the tax
liabilities plus any interest, penalties, additions to
tax, and additional amounts required by law (tax
liability) for the tax type and period marked below:
* * *

☒   **1040/1120 Income Tax** — Year(s) 1990, 1991, 1992,
     1994, 1996, 1997, 2002

    \*       \*       \*       \*       \*       \*       \*

☒   **Trust Fund Recovery Penalty** as a responsible
     person of (enter corporate name) Henry M. Lloyd
     PC, for failure to pay withholding and Federal
     Insurance Contributions Act Taxes (Social Security
     taxes), for period(s) ending 9703.
☐   **Other Federal Tax(es)** [specify type(s) and
     period(s)]

In items 6 and 7 of petitioner's September 29, 2004 offer-

in-compromise, petitioner provided the responses indicated to the

following questions:

---

[15](...continued)
that was dated Sept. 29, 2004.  We do not know whether Form 656
that petitioner signed and that was dated Sept. 29, 2004, and
that Mr. Silverberg enclosed with Mr. Silverberg's October 1,
2004 letter was the "last amended F656" referred to in the first
offer specialist's September 6, 2004 letter.  See supra note 13
and accompanying text.

**Item 6 — I/We submit this offer for the reason(s) checked below:**

☐ **Doubt as to Liability** — "I do not believe I owe this tax." * * *

☒ **Doubt as to Collectibility** — "I have insufficient assets and income to pay the full amount." You must include a complete Collection Information Statement, Form 433-A and/or Form 433-B.

☐ **Effective Tax Administration** — "I owe this amount and have sufficient assets to pay the full amount, but due to my exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair and inequitable." You must include a complete Collection Information Statement, Form 433-A and/or Form 433B * * *.

---

**Item 7**

I/We offer to pay $139,707.00 **(must be more than zero).** * * *

Check **only** one of the following:

   *       *       *       *       *       *       *

☐ **Short-Term Deferred Payment Offer (Offered amount paid in MORE than 90 days but within 24 months from written notice of acceptance of the offer.)**

   *       *       *       *       *       *       *

☒ **Deferred Payment Offer (Offered amount will be paid over the remaining life of the collection statute.)**

$1,664 within 90 days * * * from written notice of acceptance of the offer; and

beginning in the first month after written notice of acceptance of the offer $1,664 on the 1st day of each month for a total of 83 months.

On November 3, 2004, respondent's collection division sent a letter to petitioner (respondent's November 3, 2004 letter) and

sent a copy of that letter to Mr. Silverberg.  That letter stated

in pertinent part:

> We are returning your Form 656, Offer in Compromise for the following reason(s):
>
> All tax periods with a balance due must be included in your Offer in Compromise.  Our records indicate the following period(s) was/were not included: Excise tax for 1991 and 1992 tax periods.
>
> If a deposit was made with the offer, we will mail the refund separately in four to six weeks.
>
> If you believe the return of your offer was made in error, or your failure to provide the information/ substantiation we requested was due to circumstances beyond your control (your serious illness, death or serious illness of your immediate family member, or disaster)[,] within 30 days from the date of this letter you may contact * * * [the first settlement officer] to request reconsideration of our decision to close your offer.  You should be prepared to discuss specifics, provide verification of the circumstances beyond your control and provide the information previously requested.

Enclosed with respondent's November 3, 2004 letter was petitioner's September 29, 2004 offer-in-compromise.[16]  At no time did respondent accept petitioner's September 29, 2004 offer-in-compromise by issuing a written notice of acceptance to petitioner as required by section 301.7122-1(e)(1), Proced. & Admin. Regs.

Around December 7, 2004, respondent issued to petitioner a notice of Federal tax lien filing and your right to a hearing

---

[16]The record does not establish that petitioner responded to respondent's November 3, 2004 letter.

(notice of tax lien) with respect to petitioner's taxable years 1990 through 1992, 1994, 1996, and 2002.[17]  Petitioner did not file Form 12153, Request for a Collection Due Process Hearing (Form 12153), with respect to that notice of tax lien.  See infra note 18.

On February 7, 2005, respondent issued to petitioner a notice of intent to levy and notice of your right to a hearing with respect to each of petitioner's taxable years 1990 through 1992, 1994, 1996, 1997, and 2002.  (We shall refer collectively to those notices of intent to levy as the notices of intent to levy.)

On March 7, 2005, respondent received Form 12153 that Mr. Silverberg submitted on behalf of petitioner (petitioner's Form 12153).  In that form, Mr. Silverberg indicated petitioner's disagreement with the notices of intent to levy and requested a hearing with respondent's Appeals Office (Appeals Office).[18]  Mr. Silverberg attached a letter to petitioner's Form 12153.  In that

---

[17]The record does not indicate why respondent did not issue to petitioner a notice of tax lien with respect to petitioner's taxable year 1997.  As discussed below, the notice of determination concerning collection action(s) under section 6320 and/or 6330 (notice of determination) made no determination with respect to the notice of tax lien with respect to petitioner's taxable years 1990 through 1992, 1994, 1996, and 2002.

[18]In petitioner's Form 12153, Mr. Silverberg did not indicate disagreement with the notice of tax lien filed with respect to petitioner's taxable years 1990 through 1992, 1994, 1996, and 2002.  See supra note 17 and accompanying text.

letter, Mr. Silverberg stated in pertinent part:

Mr. Lloyd has been dealing, through me as his representative, with the Collections Division in Fairfax, Virginia, and with your [first] Offer Specialist * * *. Mr. Lloyd has submitted Form 656 proposing Offers in Compromise to settle these liabilities due to doubt as to collectibility. Throughout a period exceeding one year, * * * [the first offer specialist] has evaluated Mr. Lloyd's Reasonable Collection Potential (RCP) and has performed an extensive investigation of his assets, his income potential and his costs of living.

After conducting his investigation, * * * [the first offer specialist] and Mr. Lloyd reached an agreement in principle, whereby Mr. Lloyd submitted an Amended Form 656 in October, 2004, offering to pay $139,707 over an installment period of 84 months. This amount is 100 per cent of the RCP finally determined by * * * [the first offer specialist]. For reasons which Mr. Lloyd and I do not understand, this OIC was treated by the Service as withdrawn at the last minute, rather than accepted. We were given the explanation that some out-of-compliance situation had been identified, and that the OIC could not be considered until Mr. Lloyd was back in compliance. Upon investigation, it was determined he was not out-of-compliance. However, no action was taken on his OIC. Instead, you have issued notices indicating you intend to levy.

Mr. Lloyd is still willing to agree to the October 2004 OIC which is 100 per cent of his RCP. He believes that he and the IRS have an agreement. However, for reasons unknown to us the Collections Division was unwilling to indicate its acceptance by signing off on the OIC.

Too much time has been invested by Mr. Lloyd and by the Service to waste it by treating the OIC as withdrawn. The agreement should be signed and Mr. Lloyd should begin making the monthly installments which will put this matter to rest.

Mr. Lloyd and I hereby request an opportunity to appear in person to discuss this matter at a CDP hearing. Our hope is that an agreed OIC will result from that hearing. * * *

On May 24, 2005, a settlement officer with the Appeals Office (settlement officer) sent a letter (settlement officer's May 24, 2005 letter) to petitioner with respect to petitioner's Form 12153. In that letter, the settlement officer stated in pertinent part:

> I have received your Collection Due Process hearing request. The objective of a Collection Due process hearing is to determine whether an acceptance alternative to the levy/lien exists, while balancing the Government's need to efficiently collect this tax liability. Options available to you for resolution of your lien/levy issue may include the following:
>
> - Full payment
>
> - Installment agreement
>
> - Offer in Compromise
>
> - Surety bond
>
> On your hearing request you indicated your offer was rejected because of non-compliance. A check of our records indicated you had an outstanding balance on your tax return for period ending 12/31/2003. The outstanding balance was paid after the offer was rejected. You cannot accumulate new liabilities. Our records also indicate you have an outstanding liability for period ending 12/31/2004. I have attached a transcript for period ending 12/31/2003.[19] If you wish to submit an offer, you must start the process again.
>
> If you feel that one of the above resolutions are possible, please respond back with your proposal <u>by no later than June 15th 2005.</u> If your proposal is anything other than full payment, then I will need you to complete and return the enclosed Forms 433-A & B. If you do not own a business, then please disregard the

---

[19]The record does not contain the "transcript for period ending 12/31/2003" referred to in the settlement officer's May 24, 2005 letter.

Form 433-B.

\* \* \* \* \* \* \*

If you do not provide the information requested, I cannot consider certain collection alternatives. If I do not have a detailed response by June 15th 2005 I will make a determination based upon the evidence that I have in the case file. If I do that[,] I will sustain the District's position and issue a determination letter.

On June 7, 2005, Mr. Silverberg and the settlement officer had a telephonic discussion (June 7, 2005 telephonic discussion). The settlement officer made the following pertinent entries in her "Case Activity Records" with respect to that discussion:

Received a call from POA [Mr. Silverberg] and he wanted to know what did his client [petitioner] has to do to have the offer [petitioner's September 29, 2004 offer-in-compromise] accepted. I explained his client wasn't in full compliance and the offer [petitioner's September 29, 2004 offer-in-compromise] was rejected. He must submit a new offer and fee of $150.00. He was also made aware the new offer will be investigated as a new offer and the rejected offer [petitioner's September 29, 2004 offer-in-compromise] is not considered. [Reproduced literally.]

On June 21, 2005, the settlement officer sent a letter to petitioner. In that letter, the settlement officer stated in pertinent part:

I have reviewed your appeal and additional information was requested. The information was due in the office on or before June 15th 2005 and as of today we haven't received the information. If you wish to bring this information to the office and have a conference, please call to arrange an appointment.

Please submit the requested information or contact me to arrange a telephone conference on or before July 6th 2005.

If you do not submit the information or call to sched-
ule an appointment I will make a determination based
upon the information in the case file.  If I do that I
will sustain the IRS position and issue a determination
letter.

If you have any questions, please contact me at the
address or telephone number shown above.

On July 7, 2005, Mr. Silverberg sent a letter to the settle-
ment officer (Mr. Silverberg's July 7, 2005 letter).  Mr.
Silverberg enclosed with that letter (1) completed Form 656, that
petitioner signed and that was dated June 24, 2005 (petitioner's
June 24, 2005 offer-in-compromise), (2) completed Form 433-A,
that petitioner signed and that was dated June 24, 2005 (peti-
tioner's June 24, 2005 Form 433-A), and (3) various documents
with respect to those forms.

In item 5 of petitioner's June 24, 2005 offer-in-compromise,
petitioner provided the responses indicated to the following
questions:

**Item 5 — To:  Commissioner of Internal Revenue Service**

I/We * * * submit this offer to compromise the tax liabilities plus any interest, penalties, additions to tax, and additional amounts required by law (tax liability) for the tax type and period marked below: * * *

☒   **1040/1120 Income Tax** — Year(s) 1990, 1991, 1992, 1994, 1996, 1997, 2002

     *         *         *         *         *         *         *

☒   **Trust Fund Recovery Penalty** as a responsible person of (enter corporate name) Henry M. Lloyd PC, for failure to pay withholding and Federal Insurance Contributions Act Taxes (Social Security taxes), for period(s) ending 9703.

☒   **Other Federal Tax(es)** [specify type(s) and period(s)] excise taxes (all) 1991 & 1992

In items 6 and 7 of petitioner's June 24, 2005 offer-in-compromise, petitioner provided the responses indicated to the following questions:

**Item 6 — I/We submit this offer for the reason(s) checked below:**

☐   **Doubt as to Liability** — "I do not believe I owe this tax."  You must include a detailed explanation of the reason(s) why you believe you do not owe the tax in Item 9.

☒   **Doubt as to Collectibility** — "I have insufficient assets and income to pay the full amount."  You must include a complete Collection Information Statement, Form 433-A and/or Form 433-B.

☐   **Effective Tax Administration** — "I owe this amount and have sufficient assets to pay the full amount, but due to my exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair and inequitable."  You must include a complete Collection Information Statement, Form 433-A and/or Form 433B **and** complete Item 9.

**Item 7**

I/We offer to pay $139,776 **(must be more than zero)**. Complete item 10 to explain where you will obtain the funds to make this offer.

Check **only** one of the following:

☐ **Cash Offer (Offered amount will be paid in 90 days or less.)**

   *     *     *     *     *     *     *

☐ **Short-Term Deferred Payment Offer (Offered amount paid in MORE than 90 days but within 24 months from written notice of acceptance of the offer.)**

   *     *     *     *     *     *     *

☒ **Deferred Payment Offer (Offered amount will be paid over the remaining life of the collection statute.)**

$1,664 within 90 days * * * from written notice of acceptance of the offer; and

beginning in the first month after written notice of acceptance of the offer $1,664 on the 1st day of each month for a total of 83 months.

In items 9 and 10 of petitioner's June 24, 2005 offer-in-compromise, petitioner provided the responses indicated to the following questions:

**Item 9 — Explanation of Circumstances**

I am requesting an offer in compromise for the reason(s) listed below:

**Note:** **If you are requesting compromise based on doubt as to liability, explain why you don't believe you owe the tax. If you believe you have special circumstances affecting your ability to fully pay the amount due, explain your situation. You may attach additional sheets if necessary.**
* * *

Doubt as to collectibility. Taxpayer is a 70-year-old sole practitioner with significant tax debts and a declining law practice. This OIC accompanies another OIC being made by Mr. Lloyd's professional corporation for its tax debts.[20] Based on a detailed investigation just completed by the IRS, this offer is 100% of the Reasonable Collection Potential of Mr. Lloyd, and the P.C.'s offer is 100% of its Reasonable Collection Potential.

---

**Item 10 — Source of Funds**

I/We shall obtain the funds to make this offer from the following source(s):

Liquidation of assets and borrowing.

Petitioner's June 24, 2005 Form 433-A contained several sections identified as sections 1 through 9. In sections 1 and 2 of that form, petitioner provided the responses indicated to the following questions:

6. List the dependents you can claim on your tax return: * * *

---

[20]Mr. Silverberg did not enclose with Mr. Silverberg's July 7, 2005 letter Form 656 with respect to petitioner's professional corporation.

```
First Name   Relationship  Age   Does this person
                                 live with you?
```

**Victoria**    **Daughter**   **24**   ☒ No  ☐ Yes

**Hunter**      **Son**        **18**   ☐ No  ☒ Yes

    \*     \*     \*     \*     \*     \*     \*

7.  Are you or your spouse self-employed or operate a business? (Check "Yes" if either applies)

    ☐ No  ☒ Yes  If yes, provide the following information:

7a. Name of Business **Henry M. Lloyd P.C.**

    \*     \*     \*     \*     \*     \*     \*

7e. Do you have accounts/notes receivable? ☒ No  ☐ Yes
    If yes, please complete Section 8 on page 5.

In section 3 of petitioner's June 24, 2005 Form 433-A, petitioner indicated that he did not have an employer other than Henry M. Lloyd, P.C.

In section 4 of petitioner's June 24, 2005 Form 433-A, petitioner provided the response indicated to the following question:

10.  Do you receive income from sources other than your own business or your employer? (Check all that apply.)

☒ Pension  ☒ Social Security  ☒ Other (specify, i.e. child support, alimony, rental) **Rental**

In section 5 of petitioner's June 24, 2005 Form 433-A, petitioner indicated that he (1) maintained a checking account that had a balance of $15,000, (2) owned a brokerage account with no current account balance, (3) had two credit cards with unspec-

ified balances, and (4) had $16,300 of credit available to him.

In sections 5 and 6 of petitioner's June 24, 2005 Form 433-A, petitioner provided the responses indicated to the following questions:

16. **LIFE INSURANCE.** Do you have life insurance with a cash value? ☒ No ☐ Yes

  *   *   *   *   *   *   *

17a. Are there any garnishments against your wages? ☒ No ☐ Yes

  *   *   *   *   *   *   *

17b. Are there any judgments against you? ☒ No ☐ Yes

  *   *   *   *   *   *   *

17e. In the past 10 years did you transfer any assets out of your name for less than their actual value? ☒ No ☐ Yes

  *   *   *   *   *   *   *

17f. Do you anticipate any increase in household income in the next two years? ☒ No ☐ Yes

  *   *   *   *   *   *   *

17g. Are you a beneficiary of a trust or an estate? ☒ No ☐ Yes

  *   *   *   *   *   *   *

17h. Are you a participant in a profit sharing plan? ☒ No ☐ Yes

In section 7 of petitioner's June 24, 2005 Form 433-A, petitioner indicated that he owned real estate in Washington, D.C., the current value of that real estate was $741,330, there were two outstanding mortgage loans totaling $625,000 with

respect to that real estate, and he was required to make monthly payments totaling $3,929.59 with respect to those loans.

In section 7 of petitioner's June 24, 2005 Form 433-A, petitioner indicated that he did not own or lease any automobiles and did not respond to the question asking whether he owned any personal assets (e.g., furniture/personal effects) or business assets.

In section 9 of petitioner's June 24, 2005 Form 433-A, petitioner listed various income items and various living expense items. With respect to the income items listed in that section, petitioner indicated that he had total monthly income of $4,342.33 consisting of $2,708.33 of monthly income from wages and $1,634 of monthly income from his pension and/or Social Security benefits. With respect to the monthly expense items listed in section 9 of petitioner's June 24, 2005 Form 433-A, petitioner indicated that he had total monthly living expenses of $5,658.94 consisting of $3,463.94 of monthly expenses for housing and utilities and $2,195 of monthly expenses for court-ordered payments.

On August 2, 2005, the settlement officer sent a letter to petitioner. In that letter, the settlement officer stated in pertinent part:

> I recently received the offer in compromise file to be associated with the CDP case file. I am making an Appeals Referral Investigation request to have the offer analyzed along with the supporting documentation

that you provided.  You will be contacted by an offer specialist in the near future.  I will maintain jurisdiction of the case and all final decisions regarding this matter will be rendered by appeals.  If you have any further questions regarding this correspondence, do not hesitate to call me.

On August 2, 2005, the settlement officer forwarded petitioner's June 24, 2005 offer-in-compromise and petitioner's June 24, 2005 Form 433-A to the IRS offer-in-compromise unit.

Around August 4, 2005, respondent assigned an offer-in-compromise specialist other than the first offer specialist to investigate petitioner's June 24, 2005 offer-in-compromise and petitioner's June 24, 2005 Form 433-A.

On September 1, 2005, the offer-in-compromise specialist (second offer specialist) with the IRS offer-in-compromise unit assigned to investigate petitioner's June 24, 2005 offer-in-compromise and petitioner's June 24, 2005 Form 433-A made the following pertinent entries in the "integrated collection system history transcript":

> Initial Review:  TP is making a DPO of $139,777 at $1,664 in 84 payments to compromise approx $264,457 sole liability, on the basis of DATC.
>
>     *       *       *       *       *       *       *
>
> - Special Circumstances:  doubt as to collectibility, because TP is 70-yr-old and his law practice is declining.
> - Funding for the offer:  Liquidation of assets and borrowing.
>
>     *       *       *       *       *       *       *
>
> TP is unmarried 70-yr old practicing attorney, with no health issues and a household of 2 (18-yr old

son) in Wash D.C. * * * Claims income of 4342 vs 5659 living expenses.  However, TP reported AGI of 87,163 in '04; 345,165 in '03; 216,074 in '02.

CONCLUSION:  Does not appear to be a valid offer on the basis of DATC:  not everything is on the table, and his income and residence seem extravagant.  Next step: do preliminary investigation and if RCP exceed liability of 264,457, conclude investigation and report findings to Appeals.

  *    *    *    *    *    *    *

* * * Claims declining income, but no evidence provided and research indicates "fluctuating" income.  [Reproduced literally.]

On September 6, 2005, the second offer specialist sent petitioner a letter (second offer specialist's September 6, 2005 letter).  In that letter, the second offer specialist stated in pertinent part:

I have been assigned to investigate your offer in compromise dated 06/24/2005.  I have completed a preliminary analysis of your offer, after reviewing the information you provided.  My analysis shows that you have the ability to pay your liability in full within the time provided by law, based on the following computations:

| | |
|---|---|
| Total net equity in assets: | $372,231.00 |
| Total future income value: | $607,296.00 |
| Total ability to pay: | $979,527.00 |
| Balance due (as of 08/15/2005) | $264,457.49 |
| Amount you offered: | $139,776.00 |

Copies of my worksheets are enclosed for you[r] review. If you disagree, you may provide additional documentation showing that the figures are incorrect.  You may also provide any other information you believe I should consider in making my recommendation as to whether to accept your offer.

Please respond by September 19, 2005, or I will proceed with my recommendation that your offer not be accepted.

If you have any questions or need more information, please contact me at the address or the telephone number listed below:

\*        \*        \*        \*        \*        \*        \*

A copy of this letter with all enclosures is being provided to your Power of Attorney, Mr. Silverberg, and to the Appeals Officer controlling your case.

The second offer specialist enclosed with the second offer specialist's September 6, 2005 letter the following so-called Asset/Equity Table:

| ASSET/EQUITY TABLE (AET) (Rev. 10-2002) | | | | | |
|---|---|---|---|---|---|
| ASSETS | Fair Market Value | Quick Sale Reduction Percentage | Quick Sale Value | Encumbrances or Exemptions | Net Realizable Equity |
| 1. Cash/Bank Accounts | $1,517.00 | | | | $1,517.00 |
| | \* | \* | \* | \* | \* | \* | \* |
| 5. Real Estate *** | $995,714.00 | 0 | $995,714.00 | $625,000.00 | $370,714.00 |
| 6. Furniture/Personal Effects | ??? | | | | |
| 7. Vehicles | | | | | |
| 8. Accounts Receivable | ??? | | | | |
| | \* | \* | \* | \* | \* | \* | \* |
| Business Interest | ??? | | | | |
| | \* | \* | \* | \* | \* | \* | \* |
| Future Income Value (see Income and Expense Table (IET) attached) | | | | | $607,296.00 |
| TOTAL MINIMUM VALUE | | | | | $979,527.00 |

\*        \*        \*        \*        \*        \*        \*

REMARKS: *** Encumbrances not documented -- subject to further valuation.
??? Information not disclosed -- subject to further valuation

The second offer specialist also enclosed with the second offer specialist's September 6, 2005 letter the following so-called Income/Expense Table:

**INCOME/EXPENSE TABLE (IET)**
**(Rev. 1-2001)**

The Internal Revenue Service uses established National and Local standards for necessary living expenses when considering Offers in Compromise. Only necessary living expenses will be allowed. Other expenses, such as charitable contributions, education, credit cards, and voluntary retirement allotments are generally not considered as necessary living expenses.

| Total Income | | Necessary Living Expenses | | |
|---|---|---|---|---|
| Source | Gross | | Claimed | Allowed |
| 31. Wages/Salaries (T/P) | $16,903.00 | 42. National Standard Expenses | $0.00 | $1,280.00 |
| 32. Wages/Salaries (Spouse) | $0.00 | 43. Housing and Utilities | $3,464.00 | $1,318.00 |
| 33. Interest | $0.00 | 44. Transportation | $0.00 | $0.00 |
| 34. Net Business Income (from Form 433-B) | $0.00 | 45. Health care | $0.00 | $0.00 |
| 35. Rental Income | $296.00 | 46. Taxes | $0.00 | $1,450.00 |
| 36. Pension (Taxpayer) | $145.00 | 47. Court ordered payments | $2,195.00 | $2,195.00 |
| 37 Pension (Spouse) | $0.00 | 48. Child/dependent care | $0.00 | $0.00 |
| 38. Child Support | $0.00 | 49. Life Insurance | $0.00 | $0.00 |
| 39. Alimony | $0.00 | 50. Secured or legally-perfected debts (specify) | $0.00 | $0.00 |
| 40. Other - Social Security | $1,551.00 | 51. Other - | $0.00 | $0.00 |
| * * * | * | * * * | * | |
| 41. Total Income | $18,895.00 | 52. Total Expenses | $5,659.00 | $6,243.00 |
| | | (Line 41 minus Line 52) NET DIFFERENCE | | $12,652.00 |

53. Net difference times (a,b or c) = Amount that could be paid from future income:

| Net difference = $12,652.00 | Months 48 | Amount that could be paid = $607,296.00 |
|---|---|---|

a) If taxpayer is making a cash offer (offering to pay in 90 days or less) multiply the amount in line 53 times 48 or the number of months remaining in the statute.
b) If the taxpayer is making a short term deferred payment offer (offering to pay within 2 years) multiply the amount in line 53 times 60 months or times the number of months remaining in the statute, whichever is shorter.
c) If the taxpayer is making a deferred payment offer (offering to pay over the life of the statute), use the Deferred Payment Chart to determine the number of months.

The total offer must equal the sum of the equity in assets and the amount that could be paid from future income unless special circumstance considerations have been approved.

NOTES:
Line 42 National Standard expenses: Maximum allowable by IRS National Expense Standard for food, housekeeping supplies, apparel and services, and personal care products, based upon gross monthly income and number of persons in the household.

Line 43 Housing & Utilities expenses: Housing and utility expenses are limited to standards established for the county of residence and the number of household members.

Line 44 Transportation expenses: Transportation expenses are limited to the standards established for zero, one or two vehicles, and to a maximum allowable amount for lease or purchase of one or two vehicles.

Line 31 Wages based on 3-yr average.
Line 35 Rental income, after adjusting for depreciation expense claimed on Schedule E
Line 46 Taxes based on last record of Fed, State, FICA, Medicare paid or withheld.
Line 47 Court ordered payments tentatively allowed, subject to itemization and proof of payments.

Petitioner did not respond by September 19, 2005, to the second offer specialist's September 6, 2005 letter. On September 20, 2005, the second offer specialist returned petitioner's June 24, 2005 offer-in-compromise to the settlement officer and recommended that it not be accepted.

On September 23, 2005, Mr. Silverberg sent a note by facsimile to the settlement officer and the second offer specialist. In that note, Mr. Silverberg stated in pertinent part:

> I am writing to request an extension of time until October 14 for Mr. Lloyd to respond to * * * [the second offer specialist's] letter of 9/6/05. My schedule has been full and I have until now been unable to confer with him about providing additional information for you to consider. Thank you in advance for your consideration.

On September 27, 2005, Mr. Silverberg sent another note by facsimile to the settlement officer and the second offer specialist. In that note, Mr. Silverberg stated in pertinent part:

> Please grant Mr. Lloyd additional time to get back to you through * * *, his accountant. * * * [petitioner's accountant] will be sending you a new Power of Attorney to discuss both Henry M. Lloyd PC and Mr. Lloyd's individual accounts. If you have any questions before receiving the new Power, please contact me.

On November 9, 2005, the settlement officer sent a letter to petitioner. In that letter, the settlement officer stated in pertinent part:

> I have scheduled a telephone conference call for you on December 6, 2005 at 10:00AM. This call will be your CDP hearing.

Please call me at * * * the date and time indicated above.

Your offer in compromise will not be recommended for acceptance and we need to discuss other alternatives [sic] means for payment such as full payment or an installment agreement.

On November 14, 2005, at 1:02 p.m., Stephen P. Kauffman (Mr. Kauffman) sent a letter by facsimile to the settlement officer (Mr. Kauffman's first November 14, 2005 letter).  In that letter, Mr. Kauffman stated in pertinent part:

> Re:  Henry M. Lloyd * * *
>      Henry M. Lloyd, P.C. * * *
>
> *      *      *      *      *      *      *
>
> I have been retained to represent the above-refer-enced taxpayers in matters pending before the Internal Revenue Service.  Enclosed you will find two (2) powers -of-attorney, form 2848, pursuant to which these tax-payers have authorized me to represent them.[21]  I understand that a Collection Due Process Hearing is currently scheduled for December 6, 2005 at 10:00 a.m. to review levies that have been issued to Mr. Lloyd personally, and that offers-in-compromise are pending for both taxpayers.  Earlier today, I sent you a copy of a CDP request I filed in connection with levies issued to Henry M. Lloyd, PC.
>
> * * * I am planning to contact * * * the [second] Offer Specialist assigned to determine the RCP of these matters to discuss his calculations. * * *

---

[21]Only Form 2848, Power of Attorney and Declaration of Representative (Form 2848), appointing Mr. Kauffman as the attorney-in-fact for petitioner is attached to the copy of Mr. Kauffman's first November 14, 2005 letter that is in the record. Form 2848 appointing Mr. Kauffman as the attorney-in-fact for Henry M. Lloyd, P.C., is not attached to the copy of Mr. Kauffman's first November 14, 2005 letter that is in the record.

Because I have just been retained, I have an open mind about this case, and will be happy to discuss with you any and all resolutions which you might consider appropriate, giving due consideration, of course, to Mr. Lloyd's advanced age and what I consider to be limited earning ability.

On November 14, 2005, at 4:51 p.m., Mr. Kauffman sent another letter by facsimile to the settlement officer. In that letter, Mr. Kauffman stated in pertinent part:

> Re: Henry M. Lloyd * * *
> Henry M. Lloyd, P.C. * * *
>
> *     *     *     *     *     *     *
>
> I want to thank you for your prompt reply to the letter I sent you earlier this morning. This letter is written to confirm our conversations this afternoon. Because I have just been retained, let me summarize my understanding of the status of the above-referenced matters in the remainder of this letter. Please respond to this letter only if my summary is incorrect.
>
> I understand that offers-in-compromise were submitted for Henry M. Lloyd ("Mr. Lloyd") and Henry M. Lloyd, P.C. (the "PC"). After the PC's offer was formally rejected, it filed an appeal. Sometime in August of this year, the PC's appeal was rejected, and the PC's delinquency is now back in collection.
>
> In contrast, Mr. Lloyd's offer has not yet been formally rejected; however, I understand that you do intend to reject it, but not until after we speak on December 6th. When you reject Mr. Lloyd's offer, you will send a formal written notice of rejection and appeal rights. I also understand that * * * [the second offer specialist] is no longer working the case at this time.
>
> On December 6th, we will discuss Mr. Lloyd's pending request for due process hearing, and potential alternative approaches to resolving the PC's and Mr. Lloyd's tax delinquencies.

On December 6, 2005, the settlement officer held a telephonic conference with Mr. Kauffman. The settlement officer made the following pertinent entries in her "Case Activity Records" with respect to that conference:

> Telephone conference with POA Mr.Kauffman. We discussed the OIC and I explained taxpayer RCP is close to 1 million dollars. He wanted to know if the taxpayer obtain the equity in his real property would I recommend acceptance of the offer. This request was denied because it appears taxpayer can enter into an installment agreement at a rate of $12,000.00 a month. he stated that the taxpayer is elder and his business is no longer at a high point. I explained he is still working and in good health. We average his last three years to determine his monthly income. We discussed the one-year rule in allowing expenses. He requested a copy of the 433A and the O/S worksheet computation. He requested time to discuss with client and telephone conference scheduled for 12/16/2005 @ 10:00AM. Information faxed to POA. [Reproduced literally.]

On December 15, 2005, Mr. Kauffman sent a letter to the settlement officer via facsimile (Mr. Kauffman's December 15, 2005 letter). In that letter, Mr. Kauffman stated in pertinent part:

> This letter is written as a follow-up to our several telephone conversations, and in anticipation of our telephone conference tentatively scheduled for Friday afternoon. Up to this time, the focus of our discussions has been on Mr. Lloyd's income, and specifically how to calculate his average monthly income in a fair fashion. Enclosed with this letter are the income/expense table which you were kind enough to fax me last week, and a spreadsheet analysis of Mr. Lloyd's income which I have prepared. Before addressing the enclosed spreadsheet analysis, a few observations about Mr. Lloyd's income are in order.
>
> Mr. Lloyd, who is an attorney engaged in the private practice of law, will be 71 this March. The

cases handles are virtually all contingent fee cases. This means he doesn't make a cent unless and until his client recovers, at which time he receives a percentage of the recovery. A contingent fee practice is very risky for an attorney, for a variety of reasons. Sometimes you lose, in which case you recover nothing. Sometimes you win, but much less than what you hoped for. Sometimes you win a big judgment against a defendant who doesn't have any money, in which case you recover nothing. Sometimes you win, but only after year and years of hard work, during which time you are spending your own money to advance your client's case.

In Mr. Lloyd's case, he is the only employee of Henry M. Lloyd, P.C., a professional corporation which he owns. Each year the corporation pays all of its net income before salary to Mr. Lloyd as his salary. Consequently, each year, the corporation has no net income and all of the net income from Mr. Lloyd's law practice is reported by Mr. Lloyd on his personal income tax return.

The income/expense table was prepared on September 2, 2005, which means that it probably covered the three-year period September 1, 2002 through August 31, 2005. These were the three best years Mr. Lloyd has had in the past twelve years. In contrast and as discussed below, my enclosed analysis looks at Mr. Lloyd's income for the previous 7 and 12 year periods.

As you can see, for the past 7 years, Mr. Lloyd earned nothing from his law practice for the years 1998, 1999, 2000, and 2001. If his average income had been computed for that four year period, it would have been zero. As it stands, his average monthly income for the seven year period is only $2,548.[22]

Mr. Lloyd's income for the past 12 years is better, but only marginally so, and certainly nowhere near as good as the income reflected on the income/expense table. In fact, for the 12 year period ending in 2004, Mr. Lloyd's average monthly is only $5,435,[22] which is less than 1/3 of the average monthly income reflected on the income/expense table.

---

[22]See infra note 32.

As this analysis demonstrates, this is the type of case where it would be unfair and misleading to calculate average monthly income over only 3 years, because income which is essentially earned over a much longer period is bunched into one or two tax years. Furthermore, nowhere in the Code, the Regulations, or the Internal Revenue Manual is a Revenue Officer such as yourself constrained to average income over only three years. IRM 5.8.5.5 identifies a number of situations which "may warrant placing a different value on future income than current or past income indicates." One such situation is where "a taxpayer has a sporadic employment history or fluctuating income," in which case the revenue officer is directed to "average earnings over several prior years." Although the IRM does indicate this is "**usually** . . . the prior 3 years," it does not and should not indicate that this is always the case, particularly in a situation such as this one where blind adherence to that rule would be patently unfair.

Mr. Kaufmann enclosed with Mr. Kauffman's December 15, 2005 letter a copy of the Income/Expense Table that the second offer specialist enclosed with the second offer specialist's September 6, 2005 letter and the following "Analysis of Gross Income" of petitioner:

**12 year analysis**

|   | Year | Gross Income | Cum. Tax. Income | Average Monthly | Cum. Avg. Monthly |
|---|------|-------------|-----------------|-----------------|-------------------|
| 1 | **1993** | 55,000 | 55,000 | 4,583 | 4,583 |
| 2 | **1994** | 52,000 | 107,000 | 4,333 | 4,458 |
| 3 | **1995** | 110,100 | 217,100 | 9,175 | 6,031 |
| 4 | **1996** | 85,000 | 302,100 | 7,083 | 6,294 |
| 5 | **1997** | 98,000 | 400,100 | 8,167 | 6,668 |
| 6 | **1998** | – | 400,100 | – | 5,557 |
| 7 | **1999** | – | 400,100 | – | 4,763 |
| 8 | **2000** | – | 400,100 | – | 4,168 |
| 9 | **2001** | – | 400,100 | – | 3,705 |
| 10 | **2002** | 200,000 | 600,100 | 16,667 | 5,001 |
| 11 | **2003** | 329,151 | 929,251 | 27,429 | 7,040 |
| 12 | **2004** | 71,842 | 1,001,093 | 5,987 | 6,952 |
| | **12 Year average monthly** | | | | [23]**5,435** |

**7 year analysis**

|   | Year | Gross Income | Cum. Tax. Income | Average Monthly | Cum. Avg. Monthly |
|---|------|-------------|-----------------|-----------------|-------------------|
| 1 | **1998** | – | – | – | – |
| 2 | **1999** | – | – | – | – |
| 3 | **2000** | – | – | – | – |
| 4 | **2001** | – | – | – | – |
| 5 | **2002** | 200,000 | 200,000 | 16,667 | 3,333 |
| 6 | **2003** | 329,151 | 529,151 | 27,429 | 7,349 |
| 7 | **2004** | 71,842 | 600,993 | 5,987 | 7,155 |
| | **7 year average monthly** | | | | [23]**2,548** |

---

[23]See _infra_ note 32.

**3 year analysis**

|   | Year | Gross Income | Cum. Tax. Income | Average Monthly | Cum. Avg. Monthly |
|---|------|--------------|------------------|-----------------|-------------------|
| 1 | **2002** | 200,000 | 200,000 | 16,667 | 16,667 |
| 2 | **2003** | 329,151 | 529,151 | 27,429 | 22,048 |
| 3 | **2004** | 71,842 | 600,993 | 5,987 | 16,694 |
| | **3 year average monthly** | | | | [24]**18,470** |

On December 16, 2005, the settlement officer held a telephonic conference with Mr. Kauffman. The settlement officer made the following pertinent entries in her "Case Activity Records" with respect to that conference:

> POA had faxed a chart requesting that we use the last seven years to compute the income of the taxpayer. I explained I would use the last three years because these years truly reflect the high and low end of his client's income. He stated he will talk to his client and request the case be returned to compliance. A determination letter will be issued * * *

On February 8, 2006, the Appeals Office issued to petitioner a notice of determination with respect to petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002. That notice stated in pertinent part:

> **Summary of Determination**
> Your offer in compromise was not recommended for acceptance because our computation indicates you have the ability to full[y] pay. We discussed the possibility of an installment agreement and you disagree with the monthly payment amount. We did not discuss any other alternatives for payment. Based on the evidence in the case file the District's decision to issue the Final Notice-Notice of Intent to Levy and Notice of your Right to a hearing is sustained.

---

[24]See _infra_ note 32.

An attachment to the notice of determination stated in pertinent part:

**I.  Verification of Legal and Procedural Requirements**

With the best information available, the requirements of various applicable law or administrative procedures have been met.

IRC Section 6331(d) requires the taxpayer be notified at least 30 days before a notice of levy can be issued. The 30-day letter was sent on tax years ending 12/31/1990, 12/31/1991, 12/31/1992, 12/31/1994, 12/31/1996, 12/31/1997 and 12/31/2002 on February 7th 2005.

    *       *       *       *       *       *       *

IRC 6330(c) allows the taxpayer to raise any relevant issues relating to the unpaid tax or the proposed levy at the hearing.

This Settlement Officer has had no prior involvement with respect to these liabilities.

**II.  Issues Raised by the Taxpayer**

**Challenges to the Amount of the Liability**

You did not challenge the amount of the liability.

**III.  Balancing Efficient Collection and Intrusiveness**

IRC section 6330 require[s] that the Settlement Officer consider [whether] the collection action balances the need for efficient collection of taxes with the tax-payer's legitimate concern that any collection action be no more intrusive than necessary.

Collection alternatives include full payment, install-ment agreement, offer in compromise and temporary suspension of collection based on financial hardship. You submitted an offer in compromise and it was deter-mined you had the ability to pay the taxes and your offer was recommended for rejection.  We also discussed an installment agreement but you were not in agreement

with the monthly payment amount.  No further alterna-
tives were discussed.

The rejection of your offer was based on the following:

Monthly income:
 Wages:              $16,903.00- Based on 3 year average
 Rental Income:        296.00
 Pension:              145.00
 Social Security:    1,551.00
Total Monthly Income:           $18,895.00


Allowable Monthly Expenses:
National Standards:      $1280.00
Housing/utilities:        1318.00
Taxes:                    1450.00
Court-ordered payments:   2195.00
Total Expenses:                  $6243.00

Excess Monthly:                            $12,652.00

Assets:

Bank Accounts:                             $  1517.00
Real Estate:
Fair Market Value: $995,714.00
Quick Sale Value:   796,571.20-80%
Encumbrances:  Not documented
Equity:                                     796,571.20

Total Net Realizable Equity:               $798,088.20

Future Income:  (12,652 x 48)               607,296.00

Reasonable Collection Potential:           $1,405,384.20

Based on the evidence in the case file the District's
decision to issue the Final Notice-Notice of Intent to
Levy and Notice of your Right to a Hearing is sus-
tained.

The notice of determination made no determination with respect to

the notice of Federal tax lien filed with respect to petitioner's

taxable years 1990 through 1992, 1994, 1996, and 2002.  See supra

note 17 and accompanying text and note 18.

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  We conclude that there are no genuine issues of material fact regarding the questions raised in respondent's motion.

A taxpayer may raise challenges to the existence or the amount of the taxpayer's underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such liability.  Sec. 6330(c)(2)(B).

In petitioner's response, petitioner does not dispute the existence or the amount of petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002.[25]  Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the determination of the Commissioner of Internal Revenue (Commissioner) for abuse

---

[25]In fact, petitioner does not advance in petitioner's response any arguments with respect to the existence or the amount of petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002.  Assuming arguendo that petitioner were disputing in petitioner's response the existence or the amount of petitioner's unpaid liabilities for those years, on the record before us, we find that petitioner may not challenge the existence or the amount of those liabilities.  That is because petitioner did not do so at the Appeals Office hearing.  See Washington v. Commissioner, 120 T.C. 114, 123-124 (2003).

of discretion.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

In petitioner's response, petitioner advances three principal arguments in support of his position that respondent abused respondent's discretion in making the determinations in the notice of determination.  We turn to petitioner's first principal argument.  In petitioner's response, petitioner argues in pertinent part:

> On September 6, 2004, an IRS Offer Specialist [first offer specialist] determined that the Petitioner's Reasonable Collection Potential ("RCP") was only $139,707,[26] and the Petitioner promptly submitted an offer to compromise for this amount.
>
> Thereafter, in violation of applicable provisions of the Code, Regulations, and its own Manual, the

---

[26]In the first offer specialist's September 6, 2004 letter, the first offer specialist indicated that he had adjusted petitioner's offer figure to $139,766 to reflect, inter alia, assessed Federal excise tax for the tax periods ended Dec. 31, 1991, and Dec. 31, 1992.  See Internal Revenue Manual (IRM) pt. 5.8.1.7(1); 5.8.2.3.1(2) (May 15, 2004).  Petitioner's September 29, 2004 offer-in-compromise, which was investigated by the first offer specialist, did not include such excise tax in the liabilities with respect to which petitioner submitted that offer and offered $139,707, and not $139,766, to compromise the liabilities that that offer was submitted to compromise.  After the settlement officer indicated during the June 7, 2005 telephonic discussion that petitioner was required to submit a new offer-in-compromise, petitioner submitted petitioner's June 24, 2005 offer-in-compromise.  Petitioner's June 24, 2005 offer-in-compromise offered $139,776 to compromise the liabilities that that offer was submitted to compromise and included Federal excise tax for the tax periods Dec. 31, 1991, and Dec. 31, 1992, in the liabilities with respect to which petitioner submitted that offer.  With the exception of those differences, the September 29, 2004 offer-in-compromise and the June 24, 2005 offer-in-compromise are identical.

Service returned the offer in error (for an alleged underpayment of a small estimated tax penalty which the Petitioner disputed) and issued levies. The Petitioner then filed a CDP hearing request.

Upon receipt of the CDP hearing request, the Settlement Officer abused her discretion by requiring the Petitioner to submit a new offer, instead of reinstating the existing offer as required by Regulation §301.6330-1(e)(1). On September 6, 2005, exactly one year after the first RCP determination * * * a second IRS Offer Specialist looking at the same financial information determined that the Petitioner's RCP was $979,527.

Although not altogether clear, it appears that petitioner is arguing that the settlement officer abused the settlement officer's discretion by (1) not accepting as petitioner's reasonable collection potential (RCP) the amount calculated by the first offer specialist in connection with petitioner's September 29, 2004 offer-in-compromise and (2)(a) instead requiring petitioner to submit a new, updated offer-in-compromise (i.e., petitioner's June 24, 2005 offer-in-compromise) accompanied by a new, updated Form 433-A (i.e., petitioner's June 24, 2005 Form 433-A) and (b) determining as petitioner's RCP an amount different from the amount of petitioner's RCP that the first offer specialist determined.

In support of the foregoing argument, petitioner relies on section 301.6330-1(e)(1), Proced. & Admin. Regs., as in effect with respect to requests for Appeals Office hearings made before November 16, 2006. That regulation provided:

(e) <u>Matters considered at CDP hearing</u>.--(1) <u>In general</u>.--Appeals has the authority to determine the validity, sufficiency, and timeliness of any CDP Notice given by the IRS and of any request for a CDP hearing that is made by a taxpayer.  Prior to issuance of a determination, the hearing officer is required to obtain verification from the IRS office collecting the tax that the requirements of any applicable law or administrative procedure have been met.  The taxpayer may raise any relevant issue relating to the unpaid tax at the hearing, including appropriate spousal defenses, challenges to the appropriateness of the proposed collection action, and offers of collection alternatives.  The taxpayer also may raise challenges to the existence or amount of the tax liability specified on the CDP Notice for any tax period shown on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute that tax liability.  Finally, the taxpayer may not raise an issue that was raised and considered at a previous CDP hearing under section 6320 or in any other previous administrative or judicial proceeding if the taxpayer participated meaningfully in such hearing or proceeding.  Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.

Petitioner's reliance on the above-quoted regulation is misplaced.  We find (1) no requirement in that regulation that the Appeals Office use as a taxpayer's RCP an amount of RCP previously determined by respondent's collection division and (2) no prohibition in that regulation on the Appeals Office's requiring a taxpayer to submit a new, updated offer-in-compromise accompanied by a new, updated Form 433-A.[27]

---

[27]Part 5.8.5.2.2 of the IRM (Nov. 15, 2004) requires any agent of the Commissioner who investigates an offer-in-compromise to request updated financial information from the taxpayer if the
(continued...)

In advancing his first principal argument, petitioner makes a related argument that respondent should not have returned to petitioner petitioner's September 29, 2004 offer-in-compromise. In support of that related argument, petitioner relies on section 301.7122-1(d)(2), Proced. & Admin. Regs.[28]  In the first offer

_____

[27](...continued)
information submitted with such an offer is older than 12 months or if there is any reason to believe the taxpayer's situation may have significantly changed.  That part 5.8.5.2.2 of the IRM provides:

> (1)  Collection Information Statements (CIS) submitted with an offer in compromise should reflect information no older than the prior six months.  If during the processing of the offer, the financial information becomes older than 12 months, contact should be made with the taxpayer to update the information.  However, in certain situations information may become outdated due to significant processing delays caused by the Service, through no fault of the taxpayer.  In those cases, it may be appropriate to rely on the outdated information if there is no indication the taxpayer's overall situation has significantly changed.  Judgment should be exercised to determine whether, and to what extent, updated information is necessary.  If there is any reason to believe the taxpayer's situation may have significantly changed, secure a new CIS.

When petitioner submitted petitioner's September 29, 2004 offer-in-compromise in early October 2004, his 2003 return and his 2004 return were not due to have been filed.  When the settlement officer sent a letter to petitioner on May 24, 2005, with respect to petitioner's Form 12153, in which the settlement officer, inter alia, requested updated financial information from petitioner to be presented in a new Form 433-A, petitioner's 2003 return and his 2004 return were due to have been filed.

[28]Sec. 301.7122-1(d)(2), Proced. & Admin. Regs., provides in pertinent part:

(continued...)

specialist's September 6, 2004 letter, the first offer specialist informed petitioner that his offer-in-compromise had to be perfected to reflect Federal excise tax assessed for the tax periods ended December 31, 1991, and December 31, 1992.  In the first offer specialist's September 15, 2004 letter, the first offer specialist informed petitioner (1) that an offer-in-compromise may be returned where there is insufficient Federal income tax withheld or paid and (2) that respondent's records indicated that insufficient Federal income tax had been withheld with respect to petitioner's taxable year 2003.

The first offer specialist and Mr. Silverberg had a telephonic discussion on September 17, 2004.  On October 1, 2004, the first offer specialist left a voice mail for Mr. Silverberg.  Thereafter, Mr. Silverberg sent Mr. Silverberg's October 1, 2004 letter to the first offer specialist and enclosed with that

---

[28](...continued)
If an offer accepted for processing does not contain sufficient information to permit the IRS to evaluate whether the offer should be accepted, the IRS will request that the taxpayer provide the needed additional information.  If the taxpayer does not submit the additional information that the IRS has requested within a reasonable time period after such a request, the IRS may return the offer to the taxpayer.  The IRS may also return an offer to compromise a tax liability if it determines that the offer was submitted solely to delay collection or was otherwise nonprocessable.  An offer returned following acceptance for processing is deemed pending only for the period between the date the offer is accepted for processing and the date the IRS returns the offer to the taxpayer. * * *

letter petitioner's September 29, 2004 offer-in-compromise.[29] That offer-in-compromise did not offer to compromise the Federal excise tax with respect to the tax periods ended December 31, 1991, and December 31, 1992, to which the first offer specialist referred in the first offer specialist's September 6, 2004 letter.[30]  On November 3, 2004, respondent's collection division sent a letter to petitioner in which respondent stated:  "Our records indicate the following period(s) was/were not included: Excise tax for 1991 and 1992 tax periods."[31]  On the record

_____

[29]The record does not indicate whether Mr. Silverberg re- sponded in Mr. Silverberg's October 1, 2004 letter to all of the requests that the first offer specialist made to Mr. Silverberg.

[30]In contrast, petitioner's June 24, 2005 offer-in- compromise offered to compromise not only petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002 but also the Federal excise tax for the tax periods ended Dec. 31, 1991, and Dec. 31, 1992.

[31]Respondent's November 3, 2004 letter further stated:

    We are returning your Form 656, Offer in Compro- mise for the following reasons(s):

    All tax periods with a balance due must be in- cluded in your Offer in Compromise.  Our records indi- cate the following period(s) was/were not included: Excise tax for 1991 and 1992 tax periods.

    If a deposit was made with the offer, we will mail the refund separately in four to six weeks.

    If you believe the return of your offer was made in error, or your failure to provide the information/ substantiation we requested was due to circumstances beyond your control (your serious illness, death or serious illness of your immediate family member, or

(continued...)

before us, we conclude that respondent complied with section 301.7122-1(d)(2), Proced. & Admin. Regs., when respondent returned to petitioner petitioner's September 29, 2004 offer-in-compromise.

On the record before us, we find that the settlement officer did not abuse the settlement officer's discretion by (1) not accepting as petitioner's RCP the amount calculated by the first offer specialist in connection with petitioner's September 29, 2004 offer-in-compromise and (2)(a) instead requiring petitioner to submit a new, updated offer-in-compromise (i.e., petitioner's June 24, 2005 offer-in-compromise) accompanied by a new, updated Form 433-A (i.e., petitioner's June 24, 2005 Form 433-A) and (b) determining as petitioner's RCP an amount different from petitioner's RCP that the first offer specialist determined.

We address next petitioner's second principal argument. In petitioner's response, petitioner argues that the settlement officer abused the settlement officer's discretion in calculating petitioner's RCP by using as the "future income" component of that calculation an average of petitioner's wage income for the

---

31(...continued)
disaster)[,] within 30 days from the date of this letter you may contact * * * [the first settlement officer] to request reconsideration of our decision to close your offer. You should be prepared to discuss specifics, provide verification of the circumstances beyond your control and provide the information previously requested.

three-year period 2002 through 2004, instead of using an average

of petitioner's wage income for the seven-year period 1998

through 2004 or the twelve-year period 1993 through 2004.[32]  In

_____

[32]In support of that argument, petitioner contends, and
respondent does not dispute, that petitioner had the following
wage income from his law practice for 1993 through 2004:

| Year | Wage Income |
|------|-------------|
| 1993 | $55,000 |
| 1994 | 52,000 |
| 1995 | 110,100 |
| 1996 | 85,000 |
| 1997 | 98,000 |
| 1998 | – |
| 1999 | – |
| 2000 | – |
| 2001 | – |
| 2002 | 200,000 |
| 2003 | 329,151 |
| 2004 | 71,842 |

Petitioner further contends that his average monthly wage
income for the seven-year period 1998 through 2004 was $2,548 and
that his average monthly wage income for the twelve-year period
1993 through 2004 was $5,435.  We disagree.  On the instant
record, we find that petitioner incorrectly calculated his
average monthly wage income for each of those periods.  The
respective average monthly wage income amounts that petitioner
claims for the period 1998 through 2004 and the period 1993
through 2004 (as well as for the three-year period 2002 through
2004) are averages of cumulative averages of petitioner's monthly
wage income for each of the years included in calculating those
respective average monthly wage income amounts.  See supra text
accompanying notes 23 and 24.  The use of those averages of
cumulative averages for the seven-year period 1998 through 2004
and for the twelve-year period 1993 through 2004, which places
significant emphasis on the years before 2002 that are included
in the respective calculations, is improper.  The correct amount
of petitioner's average monthly wage income for 1998 through 2004
is $7,154.68.  The correct amount of petitioner's average monthly
(continued...)

calculating the "future income" component of petitioner's RCP on the basis of the three-year period 2002 through 2004, the second offer specialist first determined petitioner's average monthly income to be $18,895, consisting of (1) $16,903 of average monthly wage income calculated by using an average of petitioner's wage income for the years 2002 through 2004[33] and (2) other monthly income totaling $1,992. The second offer specialist then calculated petitioner's "excess" monthly income (i.e., $12,652) by subtracting allowed monthly necessary living expenses (i.e., $6,243) from petitioner's average monthly income (i.e., $18,895). Finally, the second offer specialist multiplied petitioner's "excess" monthly income ($12,652) by 48 months to determine the "future income" component of petitioner's RCP (i.e., $607,296).

The settlement officer reviewed the second offer specialist's determination of petitioner's RCP and agreed with, inter

---

[32](...continued)
wage income for 1993 through 2004 is $6,952.03.

[33]The record does not disclose the basis for the second offer specialist's calculation of petitioner's average monthly wage income for 2002 through 2004 (i.e., $16,903). The monthly average of the wage income that petitioner claims for 2002 through 2004 is $16,694.25. The Court is unable to reconcile the difference between the monthly average of petitioner's wage income for 2002 through 2004 as calculated by the second offer specialist and the monthly average of the wage income that petitioner claims for 2002 through 2004. However, it is not necessary to reconcile that difference in order to dispose of respondent's motion.

alia, that specialist's use of the three-year period 2002 through 2004 on which to calculate the "future income" component of such RCP. We believe that the second offer specialist's calculation of the "future income" component of petitioner's RCP on the basis of the three-year period 2002 through 2004, with which the settlement officer agreed, is supported by part 5.8.5.5 of the IRM (Sept. 1, 2005), which provides:

> 5.8.5.5 * * * **Future Income**
>
> (1)  Future income is defined as an estimate of the taxpayers [sic] ability to pay based on an analysis of gross income, less necessary living expenses, for a specific number of months into the future.  The number of months used depends on the payment terms of the offer.
>
>   a.  For cash offers -- project for the next 48 months.
>   b.  For short term deferred offers -- project for the next 60 months.
>   c.  For deferred payment offers -- project for the number of months remaining on the statutory period for collection.
>
>     *     *     *     *     *     *     *
>
> (3)  Consider the taxpayers [sic] overall general situation including such facts as age, health, marital status, number and age of dependents, highest education or occupational training, and work experience.
>
> (4)  Retired Debts -- A taxpayers [sic] ability to pay in the future may change during the period it is being considered because necessary expenses may increase or decrease.  Adjust the amount or number of payments to be included in the future income calculation, based on the expected change in necessary expenses.

**Example:** The taxpayer may pay off an auto loan 24 months from the date the offer is accepted. This would increase the monthly future income by the amount of the loan payment. Child support payments may stop before the future income period is complete because the child turns a certain age. It is expected that these retired payments would increase the taxpayers [sic] ability to pay.

**Note:** Inclusion of retired debt should not be added automatically in the calculation of the reasonable collection potential (RCP). The Offer Investigator should use judgment in determining whether inclusion of the retired debt is appropriate based on the facts of the case; such as special circumstance or Effective Tax Administration (ETA) situations. In all instances, the case histories should be documented to support the inclusion and/or exclusion of the retired debt.

(5) Some situations may warrant placing a different value on future income than current or past income indicates:

| If... | Then... |
|---|---|
| *      *      *      *      *      *      * | |
| A taxpayer has a sporadic employment history or fluctuating income | Average earnings over several prior years. Usually this is the prior 3 years.<br>**Note:** This practice does not apply to wage earners. |
| A taxpayer is elderly, in poor health, or both and the ability to continue working is questionable | Adjust the amount or number of payments to the expected earnings during the appropriate number of months. Consider special circumstance situations when making any adjustments. |
| *      *      *      *      *      *      * | |

(6) Below are some examples on when it is and is not appropriate to income average. Judgment should be used in determining the appropriate time to apply income averaging on a case by case basis. All circumstances of the taxpayer should be considered when determining the appropriate application of income averaging, including special circumstance and Effective Tax Administration considerations.

a. The examples below are instances when income averaging may or may not be appropriate.

**Example**: A taxpayer is a commissioned sales person and the income varies year to year. It would be appropriate to income average in this case.
* * *

Even if it were arbitrary for the settlement officer to have agreed with and accepted the second offer specialist's calcula-tion of the "future income" component of petitioner's RCP by using petitioner's average monthly wage income for the three-year

period 2002 through 2004, the settlement officer did not abuse the settlement officer's discretion in agreeing with the second offer specialist that petitioner's June 24, 2005 offer-in-compromise should be rejected and in rejecting that offer. That is because part 5.8.1.1.3(3) of the IRM (Sept. 1, 2005) requires that generally "a Doubt as to Collectibility * * * offer amount must equal or exceed a taxpayers [sic] reasonable collection potential (RCP) in order to be considered for acceptance." As explained below, even if the period 1998 through 2004 or the period 1993 through 2004 were used to determine petitioner's average monthly wage income and the "future income" component of petitioner's RCP, petitioner's RCP nonetheless would exceed the amount (i.e., $139,776) that petitioner offered in petitioner's June 24, 2005 offer-in-compromise to compromise, inter alia, petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002.

Part 5.8.1.1.3 of the IRM (Sept. 1, 2005) provides:

5.8.1.1.3 * * * **Policy**

(1)  Policy Statement P-5-100 states:

> The Service will accept an offer in compromise when it is unlikely that the tax liability can be collected in full and the amount offered reasonably reflects collection potential. An offer in compromise is a legitimate alternative to declaring a case currently not collectible or to a protracted installment agreement. The goal is to achieve collection of what is potentially collectible at the earliest possible time and at the least cost to the Government.

In cases where an offer in compromise appears to be a viable solution to a tax delinquency, the Service employee assigned the case will discuss the compromise alternative with the taxpayer and, when necessary, assist in preparing the required forms. The taxpayer will be responsible for initiating the first specific proposal for compromise.

The success of the offer in compromise program will be assured only if taxpayers make adequate compromise proposals consistent with their ability to pay and the Service makes prompt and reasonable decisions. Taxpayers are expected to provide reasonable documentation to verify their ability to pay. The ultimate goal is a compromise which is in the best interest of both the taxpayer and the government. Acceptance of an adequate offer will also result in creating for the taxpayer an expectation of a fresh start toward compliance with all future filing and payment requirements.

(2) Offers will not be accepted if it is believed that the liability can be paid in full as a lump sum or through installment payments extending through the remaining statutory period for collection (CSED), unless special circumstances exist. See IRM 5.14, Installment Agreements.

(3) Absent special circumstances, a Doubt as to Collectibility (DATC) offer amount must equal or exceed a taxpayers [sic] reasonable collection potential (RCP) in order to be considered for acceptance.[34] The exception is that if special

_____

[34]The only reason that petitioner gave in petitioner's June 24, 2005 offer-in-compromise for the IRS to accept petitioner's offer was "Doubt as to Collectibility". Petitioner did not give as a reason "Doubt as to Collectibility with Special Circumstance" or "Effective Tax Administration". Consistent with the general rule of part 5.8.1.1.3(3) of the IRM (Nov. 15, 2004) for an offer-in-compromise based on "Doubt as to Collectibility", petitioner offered in petitioner's June 24, 2005 offer-in-compromise an amount ($139,776) that was greater than the amount of petitioner's RCP ($139,707) that petitioner claims the first offer specialist determined in September 2004. Assuming arguendo

(continued...)

circumstances exist as defined in IRM 5.8.4.3, Effective Tax Administration and Doubt as to Collectibility with Special Circumstance, or IRM 5.8.11, Effective Tax Administration, the offer may be accepted on the basis of hardship or Effective Tax Administration (ETA).[35]

Assuming arguendo, as petitioner argues, that the "future income" component of petitioner's RCP should have been calculated by using his average monthly wage income for the seven-year

---

[34](...continued)
that petitioner had based petitioner's June 24, 2005 offer-in-compromise on "Doubt as to Collectibility with Special Circumstance" or "Effective Tax Administration", on the record before us, we find that the settlement officer did not abuse the settlement officer's discretion in concluding that that offer-in-compromise should be rejected on those grounds. Although petitioner was 70 years old in September 2005 when the settlement officer (and the second offer specialist) was considering petitioner's June 24, 2005 offer-in-compromise, petitioner was still practicing law and did not claim that he had any health issues.

[35]See Murphy v. Commissioner, 125 T.C. 301, 309 (2005), affd. 469 F.3d 27 (1st Cir. 2006), where we stated:

Special circumstances are (1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential of the case or (2) if no demonstration of such suffering can be made, circumstances justifying acceptance of an amount less than the reasonable collection potential of the case based on public policy or equity considerations. IRM pt. 5.8.4.3.4 (Sept. 1, 2005) (Effective Tax Administration and Doubt as to Collectibility with Special Circumstances). To demonstrate that compelling public policy or equity considerations justify a compromise, the taxpayer must be able to demonstrate that, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner. Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

period 1998 through 2004 (i.e., $7,154.68), rather than his average monthly wage income for the three-year period 2002 through 2004, petitioner's RCP would be $937,464.84.[36] Petitioner's RCP as so calculated exceeds the amount (i.e., $139,776) in petitioner's June 24, 2005 offer-in-compromise that petitioner offered to compromise, inter alia, petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002. See IRM pt. 5.8.1.1.3(3) (Sept. 1, 2005).

---

[36]The monthly average of petitioner's wage income for 1998 through 2004 is $7,154.68. See supra note 32. Adding to that amount petitioner's other monthly income (i.e., $1,992) and subtracting petitioner's allowed monthly necessary living expenses (i.e., $6,243) results in "excess" monthly income of $2,903.68. That amount of "excess" monthly income multiplied by 48 months results in "future income" of $139,376.64. That amount of "future income" plus the amount that the settlement officer calculated as the "net realizable equity" component of petitioner's RCP (i.e., $798,088.20), which "net realizable equity" component petitioner does not dispute in petitioner's response, results in a reasonable collection potential for petitioner of $937,464.84. In this connection, we note that on Sept. 6, 2005, the second offer specialist sent petitioner a letter and enclosed with that letter a so-called Asset/Equity Table which showed a fair market value of real estate owned by petitioner of $995,714, a quick sale value of that real estate of the same amount, encumbrances on that real estate of $625,000, and "net realizable equity" with respect to that real estate of $370,714. However, in a footnote next to those amounts the second offer specialist indicated: "Encumbrances not documented - subject to further valuation." The notice of determination that the Appeals Office issued to petitioner on Feb. 8, 2006, indicated, inter alia, that petitioner had real estate with a fair market value of $995,714, that that real estate had a quick sale value of $796,571.20 (or 80 percent of that fair market value), that any encumbrances with respect to that real estate were "Not documented", and that petitioner's total "net realizable equity" was $798,088.20. In petitioner's response, petitioner does not dispute the determination in the notice of determination of petitioner's "net realizable equity" of $798,088.20.

Assuming arguendo, as petitioner argues alternatively, that the "future income" component of petitioner's RCP should have been calculated by using his average monthly wage income for the twelve-year period 1993 through 2004, rather than his average monthly wage income for the three-year period 2002 through 2004, petitioner's RCP would be $927,737.64.[37]  Petitioner's RCP as so calculated exceeds the amount ($139,776) in petitioner's June 24, 2005 offer-in-compromise that petitioner offered to compromise, inter alia, petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002.  See IRM pt. 5.8.1.1.3(3) (Sept. 1, 2005).

On the record before us, we find that the settlement officer did not abuse the settlement officer's discretion in rejecting the offer of $139,776 in petitioner's June 24, 2005 offer-in-compromise.

---

[37]The monthly average of petitioner's wage income for 1993 through 2004 is $6,952.03.  See supra note 32.  Adding to that amount petitioner's other monthly income (i.e., $1,992) and subtracting petitioner's allowed monthly necessary living expenses (i.e., $6,243) results in "excess" monthly income of $2,701.03.  That amount of "excess" monthly income multiplied by 48 months results in "future income" of $129,649.44.  That amount of "future income" plus the amount that the settlement officer calculated as the "net realizable equity" component of petitioner's reasonable collection potential (i.e., $798,088.20), which "net realizable equity" component petitioner does not dispute in petitioner's response, results in a reasonable collection potential for petitioner of $927,737.64.  See supra note 36.

We turn finally to petitioner's third principal argument. In petitioner's response, petitioner argues that the settlement officer "made no effort to balance the Service's needs for efficient collection of taxes against the taxpayers' legitimate concern that collection action be no more intrusive than necessary."

We have found that, assuming arguendo that the settlement officer had calculated the "future income" component of petitioner's RCP by using petitioner's average monthly wage income for the seven-year period 1998 through 2004 or his average monthly wage income for the twelve-year period 1993 through 2004, petitioner's RCP nonetheless would have exceeded the amount (i.e., $139,776) that petitioner offered in petitioner's June 24, 2005 offer-in-compromise. In the case of the use of such seven-year period, petitioner's RCP would have exceeded petitioner's offer by $797,688.84. In the case of the use of such twelve-year period, petitioner's RCP would have exceeded petitioner's offer by $787,961.64. As discussed above, in order to be considered for acceptance, an offer based on "Doubt as to Collectibility", the basis on which petitioner submitted petitioner's June 24, 2005 offer-in-compromise, generally must equal or exceed the taxpayer's RCP. Id. Regardless of whether the "future income" component of petitioner's RCP is calculated on one of the two bases urged by petitioner or on the basis used by the settlement

officer, petitioner's offer of $139,776 in petitioner's June 24, 2005 offer-in-compromise did not equal or exceed that RCP.

On the record before us, we find that the settlement officer took into consideration whether the proposed collection action with respect to petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002 balanced the need for the efficient collection of those liabilities with the legitimate concern of petitioner that that collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C).

Based upon our examination of the entire record before us, we find that respondent did not abuse respondent's discretion in making the determinations in the notice of determination with respect to petitioner's unpaid liabilities for 1990, 1991, 1992, 1994, 1996, 1997, and 2002. On that record, we sustain those determinations.

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's motion and decision for respondent will be entered</u>.