T.C. Memo. 2010-100

UNITED STATES TAX COURT

MANUEL AND JUDY F. VELA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26644-07L.                    Filed May 6, 2010.

<u>Alvaro G. Velez</u>, for petitioners.

<u>Emily Giometti</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  Petitioners petitioned the Court pursuant to
section 6330(d)[1] to review determinations of the Internal Revenue
Service's Office of Appeals (Appeals Office) (1) sustaining the

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All dollar amounts are
rounded to the nearest dollar.

filing of notices of Federal tax lien relating to trust fund recovery penalties assessed against petitioners pursuant to section 6672 as responsible persons for the payment of quarterly employment taxes for the periods ending December 31, 1999, through December 31, 2002, and for the periods ending December 31, 2003, through September 30, 2004, with respect to unpaid liabilities of Apex Mental Health Services, Inc., Ohio Treatment Alliance, Inc., and Symbiont NFP, Inc.; (2) sustaining the filing of a notice of Federal tax lien relating to petitioners' unpaid Federal income tax for 2003; and (3) rejecting a separate offer-in-compromise (OIC) submitted by each petitioner based on doubt as to collectibility.  This case is before us on respondent's motion for summary judgment and petitioners' response thereto. The issues for decision are whether the Appeals Office abused its discretion in sustaining the filing of notices of Federal tax lien and in rejecting the separate OICs petitioners submitted.

## Background

Petitioners resided in Ohio at the time they filed their petition.

Petitioners owned and operated several businesses from 1999 through 2004, and they also owned real estate properties in the Newark and Columbus, Ohio, area.

Apex Mental Health Services, Ohio Treatment Alliance, and Symbiont were three corporations that failed to pay their

employment taxes reportable on Form 941, Employer's Quarterly Federal Tax Return. The Internal Revenue Service (IRS) found petitioners liable as responsible persons for those taxes and assessed section 6672 penalties against them for the quarterly periods ending December 31, 1999, through December 31, 2002, and for the periods ending December 31, 2003, through September 30, 2004.[2]

On September 22, 2004, the IRS sent petitioners Notices of Federal Tax Lien Filing and Your Right to a Hearing under section 6320 for section 6672 penalties for the quarterly periods ending December 31, 1999, through December 31, 2002. The IRS recorded the liens for each of the periods on September 27, 2004.

Two years later, on September 22, 2006, the IRS again issued notices of lien to petitioners. The notices included all periods listed on the prior notices dated September 22, 2004, as well as the quarterly periods ending December 31, 2003, March 31, 2004, June 30, 2004, and September 30, 2004. The IRS recorded the liens for those periods on September 28, 2006.

The IRS also issued a notice of levy with respect to petitioners' Federal income tax liability for 2003 on September

---

[2]We note that the IRS had previously assessed sec. 6672 penalties against petitioners with respect to two other corporations, Frenier Sheet Metal, Inc., and Frenier Building Systems, Inc., which are not involved in this case. It appears that petitioners, who are fiduciaries charged with the responsibility of paying trust fund taxes to the IRS, have converted those funds for their personal use.

22, 2006, and recorded a lien for that liability on October 6, 2006.

At the end of September 2006 petitioners owed a total unpaid balance of approximately $983,560 with respect to their liabilities for the section 6672 trust fund penalties and their joint income tax liability for 2003.

On October 31, 2006, each petitioner filed a Form 12153, Request for a Collection Due Process Hearing (CDP request), with respect to their 2003 income tax liability and the section 6672 penalties for all of the quarterly periods involved.  Each CDP request asked for a face-to-face conference to discuss alternative collection methods, including the possibility of an installment agreement or an OIC.  In their CDP requests petitioners did not raise any issues regarding the appropriateness of the collection action or dispute their underlying liabilities.

The IRS subsequently recorded an additional lien on November 6, 2006, and issued a notice of lien on November 10, 2006, both relating to the same periods for which it had previously filed liens.

Petitioners filed second CDP requests on November 24, 2006, which raised the same issues as had their first CDP requests.

On December 7, 2006, the Appeals Office mailed letters to petitioners acknowledging that it had received the case for

consideration.  On January 10, 2007, the Appeals Office in Columbus, Ohio, sent a similar letter to petitioner Manuel Vela (Mr. Vela) acknowledging receipt of the case and explaining its role and purpose in conducting CDP proceedings.

On January 12, 2007, Alvaro G. Velez (Mr. Velez), petitioners' counsel, sent the IRS a letter verifying the entities and periods with respect to which the employment taxes and the section 6672 penalties had been assessed.

On February 23, 2007, Settlement Officer Thomas J. Fehr (SO Fehr) sent petitioners letters scheduling a face-to-face CDP hearing with them for March 28, 2007.  The letters explained the issues the Appeals Office would consider during the hearing and listed items which petitioners should provide to support any proposed collection alternatives.

On March 13, 2007, each petitioner submitted a separate OIC on Form 656, Offer in Compromise, offering a compromise of the petitioner's liabilities for all periods at issue based on a short-term deferred payment of $50,885, a total of $101,770 for the two offers.  With their OICs petitioners provided Forms 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, which showed they own interests in three businesses:  (1) Alps, Ltd. (Alps); (2) Fairfield Academy, Ltd. (Fairfield); and (3) McVee Holdings, Ltd. (McVee).

Alps is a partnership that provides assisted living services to individuals with mental or developmental disabilities or illnesses. Each petitioner owns a 33.33-percent interest in Alps. Fairfield is a residential center and school for boys with mental retardation, developmental disabilities, mental illness, or past criminal behavior. Each petitioner owns a 50-percent interest in Fairfield. McVee is a real estate holding company in which Mr. Vela owns a 98-percent interest and Mrs. Vela owns a 2-percent interest. McVee rents some of the real estate it owns to Alps and Fairfield.

On March 27, 2007, the Appeals Office sent a letter to Mr. Vela stating that it had received and would consider his OIC. The next day SO Fehr spoke on the telephone with Mr. Velez, at which time they agreed to postpone the hearing and communicate by telephone or correspondence as to the evaluation of petitioners' OICs.

On May 7, 2007, the Appeals Office decided that Settlement Officer Christopher Hosking (SO Hosking) would assist SO Fehr in the evaluation of the OICs and sent a letter so notifying petitioners.

On May 22, 2007, SO Hosking reviewed petitioners' OICs and their Forms 433-A and sent a letter to them requesting additional information and supporting documents. SO Hosking also sent three other letters to Mr. Vela requesting that he provide completed

Forms 433-B, Collection Information Statement for Businesses, and other financial information with respect to Alps, Fairfield, and McVee.

Between May and July 2007, petitioners submitted Forms 433-B for Alps, Fairfield, and McVee.

On July 11 and 12, 2007, SO Hosking sent letters to petitioners, with which he returned to them their Forms 433-A and Forms 433-B because they had not fully completed the forms or provided the necessary requested data.  The letters listed the additional information needed to evaluate petitioners' OICs and determine the reasonable collection potential.

Petitioners responded in a letter dated August 8, 2007, with which they provided some of the additional information requested. With respect to their Forms 433-A, they submitted their tax returns, bank statements, financial information, a list of real estate properties purportedly held by them personally, and information regarding each of the properties.

Petitioners' list of properties states that they own the following:  (1) 22 4th Street, Newark, Ohio 43055; (2) 662 Westwood Drive, Newark, Ohio 43055; (3) 174 Mt. Vernon Road, Newark, Ohio 43055; and (4) 82 Hoover Street, Newark, Ohio 43055.

The Integrated Tax, Real Estate, Assessment, and Collections records maintained by Licking County, Ohio, show that petitioners also own a property at 11-15 W. Church Street, Newark, Ohio 43055

(11-15 Church property), which petitioners had stated was owned by McVee.

Petitioners, rather than McVee, apparently own a sixth property, at 117 North Columbus Street, Lancaster, Ohio 43130.

Petitioners submitted to the Appeals Office appraisal and valuation information with respect to the following properties purportedly owned by McVee:  (1) 7860 Pleasantville Road, Thornville, Ohio 43076; (2) 21/27 W. Church Street, Newark, Ohio 43055; (3) 20 Arcadia Avenue, Columbus, Ohio 43202; (4) #8 Hollow Road, Rehoboth, Ohio; and (5) 26 3rd Street, Newark, Ohio 43055.

For Alps, petitioners submitted tax returns, bank statements, a statement of deposits and filings, and a summary of wages paid.  For Fairfield, petitioners submitted tax returns, bank and financial statements, and other information.  The record shows that both Alps and Fairfield received regular aid contributions and deposits from the State of Ohio auditor.  For McVee, petitioners submitted tax returns, bank statements, and other financial information.

On August 20, 2007, SO Hosking sent a letter to petitioners stating that he had completed review of their OICs and could not recommend acceptance because their reasonable collection potential far exceeds the combined amount of their offers.  The letter included his analysis of petitioners' reasonable collection potential, explaining that petitioners had total

equity of $797,703, including $398,072 invested in real estate, and business equity in Alps, Fairfield, McVee, Apex Mental Health, and Prudential Financial of $12,735, $11,991, $255,498, $4,380, and $82,280, respectively.  The analysis also concluded that petitioners had monthly disposable income of $5,541 resulting in collectible future income of $537,477 and a total reasonable collection potential of $1,335,180.

Mr. Velez, petitioners' counsel, met with SO Fehr and SO Hoskings to discuss the OICs on September 5, 2007.  Petitioners did not present at that meeting any specific information to rebut the findings made in SO Hosking's collection potential analysis.  However, during that meeting the parties discussed the possibility of entering into an installment agreement with an unspecified period during which petitioners would liquidate their real estate assets, with the proceeds to be applied to their Federal tax liabilities.  Petitioners were given until September 21, 2007, to submit a final proposal for this collection alternative, but they did not submit any such proposal.

On the basis of SO Fehr's review of SO Hosking's analysis and the documents petitioners provided during the CDP proceeding, SO Fehr determined that petitioners' OICs should be rejected.  At the time of his determination on September 24, 2007, petitioners had outstanding tax liabilities of at least $1,180,652.

On October 17, 2007, SO Fehr sent letters to petitioners notifying them that the Appeals Office had rejected their OICs. Also on October 17, 2007, the Appeals Office issued three notices of determination, one to petitioners jointly and one to each petitioner separately, sustaining respondent's collection action with respect to the section 6672 penalties for the quarterly tax periods involved and with respect to petitioners' joint income tax liability for 2003. The notices included SO Hosking's analysis as previously provided to petitioners along with his letter of August 20, 2007.

Each notice of determination, approved by Appeals Team Manager Dewayne Turk, stated that Appeals rejected petitioners' OICs and sustained the filing of the notices of Federal tax lien. The Appeals Case Memorandum (ACM) attached to petitioners' notices of determination submitted by SO Fehr, states, in pertinent part, as follows:

> II.  Issues Raised by the Taxpayer
>
> After the initial evaluation of the taxpayer's OIC, his requested hearing was scheduled for August 31, 2007. At Mr. Velez's request, the hearing was rescheduled for September 5, 2007. At that hearing, the taxpayer was given until September 21, 2007, to provide additional information or to submit another collection alternative. There was no additional response from the taxpayer.
>
> NFTL - The taxpayer did not raise specific issues with regards to the filing of the NFTL for Appeals' consideration.

Appeals determined that all legal and administrative requirements for filing a NFTL were followed.  Finding no basis for granting relief on this issue, Appeals sustains the filing of the NFTL.

Collection Alternative (OIC) - Mr. Vela submitted an OIC to compromise his tax liabilities for the joint income tax due for 2003 and Trust Fund Recovery Penalties (TFRP) assessed against each individually.

The terms of Mr. Vela's short term deferred offer were as follows:  $50,885 payable $2,120.19 within 30 days of acceptance and monthly payments in the same amount payable on the 23rd day of each month for 23 months.

The evaluation of the taxpayer's financial information concluded that the joint reasonable collection potential (RCP) was $1,335,180.  The work papers showing how the RCP was calculated are attached to this ACM.

The taxpayer did not provide any additional information for consideration by the deadline of September 21, 2007.

Appeals has rejected the taxpayer's OIC because the amount offered did not equal or exceed his RCP.

Collection Alternative - At the conference on September 5, 2007, Mr. Velez also inquired about the possibility of the taxpayer making payments with a period of time for liquidating real estate assets.  As of the deadline of September 21, 2007, no specific proposal for Appeals' consideration was forthcoming.

The taxpayer did not raise any issues challenging the underlying tax liability.

The taxpayer raised no other relevant issues.

III.  Balancing the Need for Efficient Collection with the Taxpayer's Concern that the Collection Action  be no More Intrusive than Necessary

Has efficient tax collection been balanced with concern regarding intrusiveness of the filing of the NFTL?

Yes, IRC section 6330 requires that the settlement officer consider whether any collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.

Given the total balance due for all of the taxpayer's tax liabilities, which is over $1,000,000, the taxpayer's failure to raise specific issues with regards to the filing of the NFTL and her failure to negotiate a collection alternative, both the filing of the NFTL and the proposed levy action do balance the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.

Respondent moved for summary judgment on the ground that SO Fehr and SO Hosking did not abuse their discretion in rejecting petitioners' OICs and in sustaining the collection action against petitioners. Petitioners filed a response to respondent's motion urging that the motion be denied and that the case be remanded to the Appeals Office.

Discussion

I. Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b).

When the case was called for trial, counsel for petitioners stated, as did counsel for respondent, that no testimony or further documentary evidence would be offered to supplement respondent's motion for summary judgment and that the relevant documents were contained in the administrative record. Therefore, after reviewing the record, we are satisfied that there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law.

## II. Standard of Review

Petitioners do not contest their underlying Federal tax liabilities for the section 6672 trust fund recovery penalties assessed against them for certain quarterly periods ending December 31, 1999, through September 30, 2004, and their joint Federal income tax liability for 2003. They also do not challenge the validity of the notices of Federal tax lien respondent filed for those taxable periods. Rather, petitioners dispute only respondent's rejection of their OICs. Thus, the Court reviews respondent's determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). We have described the abuse of discretion standard as meaning "arbitrary, capricious, or without sound basis in fact or law." Giamelli v.

Commissioner, 129 T.C. 107, 111 (2007) (citing Woodral v. Commissioner, 112 T.C. 19, 23 (1999)). In reviewing for abuse of discretion, we generally consider "only arguments, issues, and other matter that were raised at the collection hearing or otherwise brought to the attention of the Appeals Office." Magana v. Commissioner, 118 T.C. 488, 493 (2002); see Living Care Alternatives of Utica, Inc. v. United States, 411 F.3d 621, 631 (6th Cir. 2005); Giamelli v. Commissioner, supra at 115; cf. Hoyle v. Commissioner, 131 T.C. 197 (2008).

III. Offers-in-Compromise

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an OIC is left to the Secretary's discretion. See Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122(a) set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioners submitted OICs based only on doubt as to collectibility.

The Commissioner may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income

are less than the full amount of the liability.  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  But, generally, under the Commissioner's administrative pronouncements an OIC based on doubt as to collectibility will be acceptable only if it reflects the taxpayer's reasonable collection potential.  Murphy v. Commissioner, 125 T.C. 301, 309 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

Petitioners filed identical offers-in-compromise of $50,885 each "payable $2,120.19 within 30 days of acceptance and monthly payments in the amount payable on the 23rd day of each month for 23 months."  At the time the Appeals Office rejected petitioners' offers on October 17, 2007, their unpaid tax liabilities were at least $1,184,683.

IV.  Reasonable Collection Potential

As reflected in the Appeals Office's analysis, the following Asset Equity Table shows the total amount of $797,703 determined as being collectible from petitioners' net realizable equity in assets:

ASSET EQUITY TABLE

| Assets | Market Value | Percentage reduced | Quick Sale Value | Encumbrances | Equity |
|---|---|---|---|---|---|
| Checking accounts | $3,159 | 0 | $3,159 | -0- | $3,159 |
| Other accounts | 3,644 | 40 | 2,186 | -0- | 2,186 |
| Investments | -0- | 0 | -0- | -0- | -0- |
| Cash | 150 | 0 | 150 | -0- | 150 |
| Life insurance | 26,581 | 0 | 26,581 | $23,530 | 3,051 |
| Life insurance | 9,201 | 0 | 9,201 | -0- | 9,201 |
| Vehicle | 15,000 | 0 | 15,000 | -0- | 15,000 |
| Real estate | 398,072 | 0 | 398,072 | -0- | 398,072 |
| Real estate | -0- | 20 | -0- | -0- | -0- |
| Personal assets | 4,500 | 20 | 3,600 | 7,720 | -0- |
| Personal tools | -0- | 20 | -0- | 3,860 | -0- |
| Business assets | -0- | 20 | -0- | -0- | -0- |
| Dissipated assets | -0- | 0 | -0- | -0- | -0- |
| Alps, Ltd. | 12,735 | 0 | 12,735 | -0- | 12,735 |
| Fairfield Academy | 11,991 | 0 | 11,991 | -0- | 11,991 |
| McVee Holdings | 255,498 | 0 | 255,498 | -0- | 255,498 |
| Apex Mental Health | 4,380 | 0 | 4,380 | -0- | 4,380 |
| Prudential Financial | 82,280 | 0 | 82,280 | -0- | 82,280 |
| Total | | | | | 797,703 |

We find and conclude that most of the amounts in petitioners' equities, as set forth in the above table, are correct and supported by the record.  Any changes in the amount of the net realizable equity are discussed later.

Most significant are petitioners' equities in their personal real estate holdings, as follows:

| Real Estate | Value | Percent | QSV | Encumbrances | Equity for Offer |
|---|---|---|---|---|---|
| 82 Hoover | $84,480 | 0 | $84,480 | $49,000 | $35,480 |
| 11-15 W. Church St. | 135,000 | 20 | 108,000 | 55,825 | 52,175 |
| 662 Westwood | 325,000 | 20 | 260,000 | 61,883 | 198,117 |
| 22 N. 4th St. | 131,800 | 0 | 131,800 | 52,000 | 79,800 |
| 174 Mt. Vernon Rd. | 92,100 | 0 | 92,100 | 59,600 | 32,500 |
| 117 N. Columbus St. | 71,250 | 20 | 57,000 | 66,105 | -0- |
| Total | | | | | 398,072 |

In addition, petitioners have substantial equities in the real estate of McVee Holdings Ltd., a partnership wholly owned by them, as follows:

| Real Estate | Value | Percent | QSV | Encumbrances | Equity for Offer |
|---|---|---|---|---|---|
| 7860 Pleasantville Rd. | $190,000 | 20 | $152,000 | $120,000 | $32,000 |
| 20 Arcadia Ave. | 162,000 | 20 | 129,600 | 44,141 | 85,459 |
| #8 Hollow Rd | 39,850 | 20 | 31,880 | 9,959 | 21,921 |
| 26 3rd St. Newark | 43,800 | 0 | 43,800 | 49,677 | -0- |
| 29 W. Church St. and 21/27 W. Church St. | 500,000 | 20 | 400,000 | 288,084 | 111,916 |
| Total | | | | | 251,296 |

Petitioners assert that the Appeals Office abused its discretion in rejecting their OICs, for several reasons. First, they argue that their proposed collection alternatives were denied because the settlement officers would not allow them the opportunity to liquidate their real estate assets and apply the proceeds to pay their tax liabilities. While respondent acknowledges that the parties discussed the possibility of petitioners' satisfying some of their liabilities by selling their real estate holdings, and the settlement officers gave petitioners a reasonable time to submit a definite proposal, petitioners never submitted a proposal or a timeline for liquidating any of their real estate assets. Apparently, petitioners never made any attempts in the 4 years after the section 6672 penalties were assessed to pay their tax obligations by selling their properties. Under the circumstances, SO Fehr did not abuse his discretion in declining to grant petitioners a collection alternative based on the possibility of selling their

properties at some unspecified time in the future. See <u>Kindred v. Commissioner</u>, 454 F.3d 688, 696 (7th Cir. 2006); <u>Clawson v. Commissioner</u>, T.C. Memo. 2004-106.

Second, in their response to respondent's motion for summary judgment, petitioners assert that SO Hosking erred in calculating their future business income because he failed to consider that McVee earned its income entirely from renting its properties and therefore the income would dissipate upon sale of the properties to satisfy their tax obligations. Similarly, they claim that SO Hosking overestimated the future income of Alps and Fairfield because both companies would incur higher rental expenses after a sale of McVee's properties.

The Internal Revenue Manual (IRM) provides that when, in determining reasonable collection potential, the IRS identifies an asset necessary for the production of income, it may be appropriate to adjust the income or expense calculation for the taxpayer to account for the loss of the income stream if the asset is either liquidated or used as collateral to secure a loan to fund the offer.

SO Hosking included both petitioners' equity in McVee and their income from McVee in the calculation of their reasonable collection potential. Respondent admits that petitioners' reasonable collection potential cannot include the same amount of future business income from McVee if petitioners sell McVee's

assets to satisfy tax liabilities, and that SO Hosking erred in concluding otherwise.  But the collection potential, if adjusted downward to correct his error, would still surpass the offer to such a degree that we find no abuse of discretion.  We conclude that his projection of future income from Alps and Fairfield was reasonable.

Third, petitioners assert in their response that SO Hosking erred by assigning a 20-percent quick sale reduction to only some of their properties when determining their net realizable equity.

Generally, for OIC purposes, the IRS considers, in determining a taxpayer's net realizable equity in assets, the quick sale value of the assets reduced by any amounts owed to secured lien holders with priority over Federal tax liens.  IRM pt. 5.8.5.4.1(1) (Sept. 23, 2008).  The IRM defines quick sale value as an estimate of the price a seller could get for the asset in a situation where financial pressures motivate the owner to sell in a short time, usually 90 calendar days or less.  Id. pt. 5.8.5.4.1(2) (Sept. 23, 2008).

Generally, the IRS calculates quick sale value at 80 percent of fair market value.  However, it may apply a higher or lower percentage, depending on the type of asset and current market conditions, if the value chosen represents a fair estimate of the price a seller could obtain when attempting to sell the asset quickly.  Id. pt. 5.8.5.4.1(3).

Of the six properties petitioners owned personally, SO Hosking employed a 20-percent quick sale reduction for the three properties with respect to which petitioners had submitted current appraisals and other information verifying the property values and available equity. For the remaining three properties, the Hoover property, the 4th Street property, and the Mt. Vernon property, SO Hosking did not calculate quick sale values because of a lack of valuation information from petitioners.

For the Hoover property, petitioners provided a 3-year-old appraisal valuing the property at $58,000, but no other information. SO Hosking assigned a value of $84,480 to the property but did not reduce it for a quick sale. It is unclear from the record how he determined the value to be $84,480 rather than $58,000. We think he should have used the $58,000 value without any quick sale reduction.

For the 4th Street property, petitioners provided no appraisal or information showing the current mortgage balance. SO Hosking obtained information on the 4th Street property from the Licking County, Ohio, auditor, showing the appraisal value of the property as $131,800 for tax purposes. SO Hosking used the $131,800 as a quick sale value, and allowed petitioners an additional reduction of $52,000 for encumbrances, despite the lack of information verifying any encumbrances. Absent information from petitioners, SO Hosking reasonably determined

that the value for tax purposes determined by the Licking County auditor represented a fair estimate of the amount petitioners could get for the 4th Street property if they should attempt to sell it quickly.

For the Mt. Vernon property, petitioners likewise did not provide an appraisal. However, they submitted a copy of a promissory note showing a loan of $82,000 taken out on the property on December 5, 2000, but they did not verify the loan balance. Information from the Licking County auditor shows that the property has a market value of $92,100, and no evidence suggests that SO Hosking acted unreasonably in not reducing this value for a quick sale.

Fourth, petitioners assert in their response that SO Hosking erred in determining that they had equity of $82,280 in Prudential Financial. Petitioners reported on their 2006 Federal income tax return a $4,114 dividend received from Prudential Financial. They did not report ownership of any interest in Prudential Financial on their Forms 433-A. Each petitioner later submitted a declaration with the response to respondent's motion for summary judgment that states: "I do not own an $82,280 investment in Prudential Financial, nor did I own such an investment at any time in 2007." SO Hosking used a 5-percent rate of return in determining petitioners' interest in Prudential Financial to be $82,280, which he included as equity in his

calculation of their reasonable collection potential when they submitted their OICs on March 13, 2007. Petitioners did not take advantage of the opportunity they were given to present information to rebut SO Hosking's calculation of any interest they had in Prudential Financial before the Appeals Office issued the notices of determination. In opposition to the motion for summary judgment, petitioners averred that they did not own an $82,280 investment in Prudential Financial at any time in 2007 even though they had received and reported dividend income from Prudential Financial in 2006. The record does not show that petitioners sold any investment they had had in Prudential during 2006. Petitioners did not show the source of the dividend they had received in 2006 and the value of their investment. Under the circumstances, we find that SO Hosking's determination of petitioners' interest was reasonable.

On this record, we conclude that the total reasonable collection potential from petitioners' net realizable equity in assets is at least $771,223, instead of $797,703, after the $26,480 reduction in the fair market and quick sale values of the Hoover property.

We sustain the settlement officers' determinations that petitioners' monthly disposable income is $5,541 and that the projected value of their future income is correct.

V. <u>Doubt as to Collectibility</u>

For the IRS to accept an OIC based on doubt as to collectibility absent special circumstances, such as economic hardship or public policy or equity considerations, the offer amount must equal or exceed a taxpayer's reasonable collection potential. <u>Murphy v. Commissioner</u>, 125 T.C. at 309; IRM pt. 5.8.1.1.3(2) and (3) (Sept. 1, 2005); see also <u>Lloyd v. Commissioner</u>, T.C. Memo. 2008-15 (holding that an Appeals officer did not abuse his discretion in rejecting an OIC based on doubt as to collectibility where the reasonable collection potential, if calculated as advocated by the taxpayer, would still exceed the amount offered).

Even if all of petitioners' allegations are correct and the reasonable collection potential is calculated as they contend, petitioners would still have at least $635,163 in net realizable equity, which is more than six times their present combined OICs. In fact, their equity of $198,117 in their residence, the Westwood property, is almost double the combined amount they offered. We point out, however, that we do not substitute our judgment for that of the Appeals Office, and we do not specify the amount we believe would be an acceptable offer-in-compromise. See <u>Murphy v. Commissioner</u>, <u>supra</u> at 320; see also <u>Fowler v. Commissioner</u>, T.C. Memo. 2004-163.

VI.  Conclusion

Petitioners have not shown that the Appeals Office's rejection of their OICs was arbitrary, capricious, or without sound basis in fact or law.  Nor have they set forth specific facts showing that there is a genuine issue for trial in that respect.  Accordingly, we find and hold that the Appeals Office did not abuse its discretion in determining to reject petitioners' OICs, to sustain the filing of the notices of Federal tax liens, and to proceed with collection action.  The Court views this as an egregious case in which petitioners willfully and deliberately failed to pay over large amounts of trust fund taxes for extended periods.  Thus, the IRS is justified in pursuing collection and filing notices of Federal tax lien.  We shall grant respondent's motion for summary judgment.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered granting respondent's motion for summary judgment</u>.